460 So.2d 120 (1984)
Albert & Bridget JONES, Minors, BY Mother and Next Friend, Albertine Jones and Barbara Jones
v.
Patricia R. HARRIS, Secretary, Department of Health and Human Services.
No. 55051.
Supreme Court of Mississippi.
November 14, 1984.
Dennis W. Carroll, Eileen Franch, Peter M.D. Martin, Baltimore, for appellants.
Stanley Ericsson, Baltimore, for appellee.
Before WALKER, P.J., and HAWKINS and PRATHER, JJ.
WALKER, Presiding Justice, for the Court:
This cause is certified by the United States Court of Appeals for the Fourth Circuit, 712 F.2d 924 (1983), pursuant to Rule 46 of the Rules of the Supreme Court of Mississippi which provides:
When it appears to the Supreme Court of the United States, or to any circuit court of appeals of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the Supreme Court of this State, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Mississippi for rendition of a judgment or opinion concerning such questions or *121 propositions of Mississippi law. This Court may, in its discretion, decline to answer the questions certified to it. (August 1, 1980).
The question certified is stated as follows:
Accepting that there is such differentiation as between legitimate children on the one hand and illegitimate children on the other hand in the applicable Mississippi statutory provisions governing rights of inheritance (compare Miss.Code § 91-1-15 of Trusts and Estates Title, Descent and Distribution Chapter with § 91-1-3 and § 91-1-11), as to render the less favorable treatment of illegitimate children unconstitutional and void, does the law of the State of Mississippi call for interpretation of the Mississippi statutes governing descent and distribution or common law to apply and extend to illegitimate children the benefits available to legitimate children, or would Mississippi achieve that result only by virtue of Federal constitutional imperative?
The underlying case concerns a claim for surviving children's insurance benefits under the Social Security Act. Under the provisions of 42 U.S.C. § 416(h)(2)(A) a child whose parents were not married qualifies as a dependent of his father if he would be entitled to share in the intestate estate of his father according to "such law as would be applied in determining the devolution of intestate personal property by the Courts of the State in which he [the insured] was domiciled at the time of his death. ..." (Emphasis added).
The three children involved are Maryland residents. The putative father was at the time of his death in April 1975 a Mississippi domiciliary. Albertine Jones initially filed for Social Security benefits on behalf of her children August 22, 1976. The United States District Court for the District of Maryland and the Court of Appeals for the Fourth Circuit upheld the denial of benefits (Jones v. Schweiker, 668 F.2d 755 (4th Cir.1981)).
A writ of certiorari was granted by the United States Supreme Court on November 1, 1982. On April 18, 1983 the Supreme Court vacated the judgment of the Fourth Circuit and remanded "for further consideration in light of Mississippi Code Annotated section 91-1-15 (Cum.Supp. 1982)." Jones v. Heckler, 460 U.S. 1077, 103 S.Ct. 1763, 76 L.Ed.2d 339 (1983).
Section 91-1-15, as amended, creates a new remedy through which illegitimates may pursue their rights in a petition to establish heirship.
Under the law as it was at that time we held in Knight v. Moore, 396 So.2d 31 (Miss. 1981) that for an illegitimate to inherit from her father she must bring suit to establish paternity within six years after attaining the age of twenty-one.
After the enactment of section 91-1-15 (Supp. 1981) which became effective July 1, 1981, we considered Estate of Kidd v. Kidd, 435 So.2d 632 (Miss. 1983)[1] and held that section 91-1-15, as amended, created a new remedy whereby illegitimates, who would have otherwise been barred under the holding of Knight v. Moore, supra, could proceed under the new remedy known as an action to determine heirship and that Emma Gunn Webber, the illegitimate child of Mack Kidd, was not barred from pursuing her claim on the estate of Kidd when brought under the new statute. We held that the chancellor had erroneously construed Knight so as to bar Emma Gunn Webber's claim and in dismissing her petition. We remanded the case to allow Ms. Webber to pursue her claim on the estate of Kidd under section 91-1-15 as amended.
In Larsen v. Kimble, 447 So.2d 1278 (Miss. 1984) the Court again looked at section 91-1-15, as amended, this time in light of a 1983 amendment to the statute. This amendment was not intended as a substantive change but was enacted to make sure *122 that the intent of the legislature was understood. The Court stated:
The 1981 amendment and the 1983 clarification thereof clearly eliminated the "unsurmountable" statutory barrier condemned in Trimble v. Gordon, supra [430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977)], while at the same time shortened the limitation period within which to bring a claim and increased the standard of proof to sustain such a claim. In doing so we believe that the amendment in 1981 and clarification amendment in 1983 will effectively afford the illegitimates equal protection of the law, while at the same time accomplish the legitimate state interest of (1) avoiding the litigation of stale or fraudulent claims, (2) the fair and just disposal of an intestate decedent's property; and (3) the repose of titles to real property. Estate of Kidd v. Kidd, supra. Justice will thereby prevail wherein all may take comfort, legitimates and illegitimates alike, that they will be treated equally under the laws of the State of Mississippi.
447 So.2d at 1283.
In Larsen this Court held that the child of an illegitimate could bring suit to determine her heirship in the estate of the father of her deceased illegitimate mother.
In Stevenson v. Daniels, 446 So.2d 597 (Miss. 1984) the Court reversed the lower court for dismissing the claim of a woman claiming to be the illegitimate daughter of the intestate. We held that her claim which was not brought within six years of her attaining majority was not barred under section 91-1-15, as amended.
We have not dealt with the constitutionality vel non of section 91-1-15, as amended, because we have not had the question presented to us in a case appealed from a court in which the matter was litigated. In this cause there has been no judicial ruling as to the constitutionality of section 91-1-15. To the contrary, the United States District Court for the District of Maryland and the United States Court of Appeals in Jones v. Schweiker, 668 F.2d 755 (4th Cir.1981), found it unnecessary to answer the question for the reason that the Jones children had not established dependency on the putative father and were ineligible for benefits for that reason.
The rule we follow is that a statute is presumed to be constitutional. Peterson v. State, 268 So.2d 335 (Miss. 1972); Masonite Corp. v. State Oil & Gas Bd., 240 So.2d 446 (Miss. 1970); Mai v. State, 152 Miss. 225, 119 So. 177 (1928); Johnson v. Reeves & Co., 112 Miss. 227, 72 So. 925 (1916); L.N. Dantzler Lumber Co. v. State, 97 Miss. 355, 53 So. 1 (1910); Runnels v. State, Walker (1 Miss.) 146 (1823). In this context, we have said:
Courts have a solemn duty to avoid passing upon the constitutionality of any law expressed by the people through their Legislature unless compelled to do so by an issue squarely presented to and confronting a court in a particular case.
Western Line Consolidated School District v. Greenville Municipal Separate School District, 433 So.2d 954, 958 (Miss. 1983).
In this case, we do not feel compelled to answer the question certified since we are asked to assume that section 91-1-15 is unconstitutional when that question has not been squarely presented to and litigated by a court of competent jurisdiction.
We therefore respectfully decline to answer the question certified.
DECLINED TO ANSWER QUESTION CERTIFIED.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
ROBERTSON, BOWLING and DAN M. LEE, JJ., specially concur.
ROBERTSON, Justice, specially concurring:

I.
This case concerns the rights of illegitimate children of deceased fathers to certain *123 social security benefits under the provisions of 42 U.S.C. § 416(h)(2)(A). To determine whether these illegitimate children are entitled to these benefits, Section 416(h)(2)(A) mandates that we ask whether they would be entitled to a share in their father's estate according to "such law as would be applied in determining the devolution of intestate personal property by the courts of the State ... in which their father was domiciled at the time of his death... ."
Why the question asked of us by the Court of Appeals was not so put escapes me. If it had been, I am confident the Court would have simply declared  as is implicit in the majority opinion  that these illegitimates were so entitled in that under Miss. Code Ann. § 91-1-15 (Supp. 1984) each had every reasonable procedural opportunity to establish their right to share in the estate of their intestate father. Assuming that there is proof sufficient to show that the deceased was in fact the father of these children, each was eligible to secure a share in the intestate estate of their father under such law as would be applied by the courts of this state.
For reasons I cannot follow, the Court of Appeals balks at this logic  and, as aptly suggested by Judge Bryan, 712 F.2d at 929, has turned this nine year old case into a Jarndyce and Jarndyce. I am prompted to make comment no more presumptuous than the Court of Appeals' views may be found disingenuous.

II.
Presiding Justice Walker has been mercifully brief in his recitation of the procedural history of this case. Suffice it to say that, almost nine years after these claimants walked into their local social security office and made claim for benefits by virtue of the death of their putative father, they still seem aways from knowing whether they ever will receive a penny. I fear there is much litigation to follow the Court of Appeals' receipt of our "Non-answer" to the certified question.
As indicated, the social security statute makes these children eligible for benefits if they would take from their intestate father according to "such law as would be applied ... by the courts of the State of Mississippi... ." The Court of Appeals reads this rather straight-forward language in a curious way. That Court reads Section 416(h)(2)(A) to provide that these children are eligible for benefits only if they would take from their intestate father by virtue of a legislative enactment of this state, or, "theoretically, by the common law of the state", 712 F.2d at 925-26 n. 1 as though the Constitution of the United States is not among the laws which "would be applied ... by the courts of ... this state." 712 F.2d at 925-926.
In the face of such a feat of judicial legerdemain, it is hard to know where to begin. Every Justice of this Court, as a pre-condition to assuming office, takes an oath to discharge his or her duties "agreeably to the Constitution of the United States." Miss. Const. Art. 6, § 155 (1890). The set of the Mississippi Code in every Justice's office contains in Volume One the self-same Constitution of the United States, one provision of which is commonly known as the Supremacy Clause, Art. VI, 2, and provides:
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . .. shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to The Contrary notwithstanding.
The Constitution of the United States is a part of that organic body of law which is applied in the courts of this state. Transcontinental Gas Pipe Line Corp. v. State Oil & Gas Board, 457 So.2d 1298, 1313 (1984). It is among the laws we have applied even when we have found its strictures odious. Bolton v. City of Greenville, 253 Miss. 656, 666, 178 So.2d 667, 672 (1965); Sanders v. State, 429 So.2d 245, 251 (Miss. 1983). We have had occasion, because of a provision of this basic federal *124 law which is applied in our courts, to convert a state statute into one actually providing the opposite of what its language required, in order to eliminate an unconstitutional feature of that statute, compare Jackson v. State, 337 So.2d 1242 (Miss. 1976) with Stevenson v. State, 325 So.2d 113 (Miss. 1975) (Mississippi's mandatory death penalty statuted judicially converted to guided-discretion statute to conform to Eighth Amendment strictures). More to the point, the Constitution of the United States as authoritatively construed in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) is among the laws as have been applied in the courts of this state in determining the devolution of intestate property. Estate of Kidd v. Kidd, 435 So.2d 632 (Miss. 1983); Witt v. Mitchell, 437 So.2d 63 (Miss. 1983). It is a part  the supreme part  of our law.
The point may be put another way. The laws applied in our courts are applied because they may be determined valid and authorized by reference to the source from which they emanate. That source may be "federal". That source may be "state". We apply laws because they are valid, because they emanate from an authoritative source, and not by reference to the label  "federal" or "state"  placed on them.
Similarly, there are many kinds of laws applied in our courts. These include statutes, case law, administrative regulations, and, yes, even constitutions. The kind of law a particular rule is may inform our decision regarding priority in case of conflict, but the label as such has no effect on whether we apply it as law in our courts.
In short, even if Section 91-1-15 is unconstitutional, and even if (were a proper case presented) we could achieve that result only by virtue of federal constitutional imperative, these illegitimate children would as a matter of rather elementary juridical logic be entitled to share in their deceased father's estate according to
"such law as would be applied in determining the devolution of intestate personal property by the courts of the state ... in which the deceased wage earner parent was domiciled at the time of his death...." [Emphasis supplied] 42 U.S.C. § 416(h)(2)(A)
The suggestion of any other understanding of the social security statutes may cause one to wonder whether Jarndyce and Jarndyce has passed into a joke.

III.
In my view, however, no resort to the Constitution need be had in order that the question presented be answered, for without regard to whether Section 91-1-15 may possess constitutional infirmities, that statute afforded a remedial and procedural vehicle through which these illegitimate children could have come to Mississippi and enforced claims to the estate of their intestate father, assuming, of course, that they could have made their proof. Witt v. Mitchell, 437 So.2d 63 (Miss. 1983). Reading Section 91-1-15 as we have authoritatively construed it and applying the social security statute, 42 U.S.C. § 416(h)(2)(A), as we understand it, we find that a simple syllogism suggests itself:
An illegitimate who proves that a deceased is his or her father is eligible to secure a share in the intestate estate of his or her father under Mississippi law.
These illegitimate children can prove that the deceased is their father.
These illegitimate children are thus eligible to secure a share in the intestate estate of their father under Mississippi law, within the meaning and contemplation of 42 U.S.C. § 416(h)(2)(A).
The second step in the syllogism, of course, contemplated (a) that these claimants had available a procedural vehicle in Mississippi to which they might have resorted had they wished to establish a claim to a share[1] in *125 the estate of their father and (b) the actual making of their proof in the forum of competent jurisdiction for the litigation of their social security claims.
Eschewing our simple and apparent syllogism, the Court of Appeals instead has written:
"First, there arises the question of whether the recently enacted statute Section 91-1-15 could be complied with by the Jones children, bringing them in that way into the ambit of 42 U.S.C. 416(h)(2)(A). No adjudication of paternity was sought or obtained before the father's death. None has yet been instituted... . While the recent Mississippi Statute permits a pre-July 1, 1981, claim to be brought until June 30, 1984, it is a claim `concerning the estate', i.e., one seeking to establish a right to inherit, not a paternity establishment action to which reference appears to have been made. At least unless and until a suit is commenced which achieves identification of the Jones children as persons entitled to share in intestacy, we do not see how a direct reliance on 91-1-15 can achieve a result favorable for them under the Social Security Act." Jones v. Heckler, 712 F.2d 924, 927 (4th Cir.1983).[2]
This reasoning is so obviously wrong that it is hard to know what to say to one who would think it correct. We allow paternity to be established in an heirship proceeding. Estate of Kidd v. Kidd, 435 So.2d 632 (Miss. 1983). We doubt it would offend any great eternal plan to allow heirship to be established in the social security proceedings. Again, the suggested syllogism seems appropriate.

IV.
Finally, we confront the question so tortuously worded. Again, where to begin, for every premise of the question is demonstrably false.
Section 91-1-15 does reassure one and all that these children under the substantive law of this state could have established a claim against the estate of their putative father. Therefore, the statute cannot be unconstitutional as to these claimants in the context of this litigation.
Assuming the statute to be unconstitutional by reference to the Constitution of the United States, these claimants' right to inherit could still in that event be determined by reference to such law as would be applied in determining the devolution of intestate personal property by the courts of this state. And, of course, if the statute be "resurrected" by virtue of "Mississippi statutes governing descent and distribution or common law" 712 F.2d at 928 that, too, should qualify under Section 416(h)(2)(A).
A review of the majority opinion convinces me that the problem lies in the form of the question. Though I would attempt an answer in any event, to be intelligible, the question must at least be pared down[3] to

*126 "... does the law of the State of Mississippi call for the interpretation of the Mississippi statutes governing descent and distribution or common law to apply and extend to these illegitimate children the benefits available to them had they been legitimate children ...?"
As I stated at the outset, a question put in the terminology of Section 416(h)(2)(A) would be even better.
If the question were put as it should have been, the answer stated in terms of the syllogism suggested above would be a simple, "Yes".
Offended at the suggestion that we presume Section 91-1-15 unconstitutional, the majority has determined not to answer the certified question. From what I have said above, I assume it is apparent that I perceive a clear answer to the certified question, one which, if formally and authoritatively given, might hasten the conclusion of this action. I would register a formal dissent but if I did so our internal rules would require that the entire matter be presented at en banc conference. The current state of our en banc docket would not permit this for some time and would surely result in even further delays.
Having said my piece, I pull in my horns and quietly assent. Jarndyce and Jarndyce drones on.
BOWLING and DAN M. LEE, JJ., concur.
NOTES
[1] The author of this opinion, Presiding Justice Walker, dissented from the holding of the majority. Estate of Kidd v. Kidd, 435 So.2d 636-39.
[1] Through the remedial device of Section 91-1-15, these illegitimate children could have asserted their claims to their putative father's estate. That the June 30, 1984, limitations period prescribed in the statute has expired should no more disqualify them than the running of the statute of limitations in other cases. That they once had a reasonably available procedural and remedial vehicle should be what Section 416(h)(2)(A) requires, not that it may now have expired.
[2] This understanding enunciated by the Court of Appeals seems clearly erroneous as the established procedure is to discern what the state court would do, not simply to look at what they have done. Owens, By and Through Owens v. Schweiker, 692 F.2d 80, 81 (9th Cir.1982) ("if they would inherit the Secretary shall apply such law as would be applied"); Childress v. Secretary of Health and Human Services, 679 F.2d 623, 625 (6th Cir.1982) (administrative law judge found that claimant was the biological son of the deceased); Gray v. Richardson, 474 F.2d 1370, 1372-73 (6th Cir.1973) (Secretary not bound by the decision of a state trial court but must follow state law); Kasey v. Richardson, 462 F.2d 757, 760 (4th Cir.1972) (extrapolation of state law by federal district court). It would thus appear that the Court of Appeals  despite the reservations it pronounced above  is free to engage in the syllogistic process suggested here.
[3] It is recognized as proper for this Court to rephrase or reframe an inartfully drawn certified question so that proper guidance may be given. Walters v. Inexco Oil Co., 440 So.2d 268, 272 (Miss. 1983); see Government Employees Insurance Co. v. Brown, 446 So.2d 1002, 1003 (Miss. 1984) (quotation of the actual certified question omitted and instead the issues at stake are addressed); DeVille Furniture Co. v. Jesco, 423 So.2d 1337, 1339 (Miss. 1983) (same); cf. DeVille Furniture Co. v. Jesco, 423 So.2d 1337, 1342 (Miss. 1983) (answering a portion of certification moots remainder which is not then answered); Anderson v. Jackson Municipal Airport Authority, 419 So.2d 1010, 1020 (Miss. 1982) (same); Krebs by and through Krebs v. Strange, 419 So.2d 178, 183 (Miss. 1982) (same).