# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-01070-SCT

*STATE OF MISSISSIPPI*

*v.*

*JESSIE PAUL WATKINS*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/11/92 |
| TRIAL JUDGE: | HON. NATHAN P. ADAMS, JR. |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LEONARD MCCLELLAN |
| ATTORNEY FOR APPELLEE: | NO BRIEF FILED |
| NATURE OF THE CASE: | CIVIL - UNCONSTITUTIONAL STATUTE |
| DISPOSITION: | REVERSED AND RENDERED - 5/30/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/20/96 |

**BEFORE PRATHER, P.J., PITTMAN AND SMITH, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

¶1. On June 26, 1992, a Special Master of the Sunflower County Chancery Court signed an order of commitment for Jessie Paul Watkins to be committed to the Mississippi State Hospital for examination and treatment "at such time as the director determines that adequate facilities and services are available." On July 29, 1992, the Special Master submitted a report to the chancellor requesting the chancellor to enter an order for the director of the Mississippi State Hospital to show cause why he should not be held in contempt for failure to admit Watkins to the State Hospital after thirty-three (33) days from the date of the commitment order.

¶2. On July 31, 1992, the chancellor accepted the report of the Special Master and entered an order directing the chancery clerk to issue a citation to Joe F. Blakeney, Director of the Mississippi State Hospital at Whitfield, to appear before the court at 9:00 a.m. on August 7, 1992, in Indianola, Mississippi, to show cause why he should not be held in contempt for failure to comply with the commitment order. The order also directed that a summons be issued for the Attorney General of the State of Mississippi to appear at the show cause hearing.

¶3. On August 7, 1992, at the conclusion of the show cause hearing, the chancellor made a bench ruling in which he declared unconstitutional that portion of Miss. Code Ann. § 41-21-77 (1992), which provides

that no person shall be admitted to the State Hospital until the Director determines that facilities and services are available. The chancellor ordered that Mr. Watkins be immediately transported to the State Hospital by the Sheriff.

¶4. The August 7, 1992, bench opinion was reduced to writing, signed and entered on September 11, 1992. From this final judgment declaring a portion of section 41-21-77 unconstitutional, the State of Mississippi perfected its appeal. Aggrieved by the decision of the court below the State of Mississippi asserts the following error on appeal:

> **THE CHANCERY COURT ABUSED ITS DISCRETION BY *SUA SPONTE* DECLARING A STATE STATUTE UNCONSTITUTIONAL WITHOUT GIVING NOTICE TO THE ATTORNEY GENERAL TO APPEAR AND DEFEND THE CONSTITUTIONALITY OF THE STATUTE.**

The chancellor erroneously declared a portion of a state statute unconstitutional and without proper notice to the Attorney General of the State. Therefore, the decision of the lower court should be reversed and rendered.

## FACTS

¶5. On June 26, 1992, Sara Black, the sister of Jessie Paul Watkins, filed an affidavit and application for commitment of Watkins in the Chancery Court of Sunflower County, Mississippi. The Special Master promptly appointed the Hull Medical Clinic of Indianola, Mississippi, to conduct a mental and physical examination of Watkins. Doctors Wade Dowell and W. L. Prichard examined Watkins on June 26, 1992, and certified that Watkins was in need of treatment by mental health professionals. An attorney was appointed by the Special Master to represent the interest of Watkins.

¶6. Following a commitment hearing (also held on June 26, 1992), the Special Master entered an order of commitment that provided that: (1) Watkins be "committed to the Mississippi State Hospital for examination and/or treatment to be admitted at such time as the director determines that adequate facilities and services are available," (2)Watkins be placed in the custody of the Sunflower County Sheriff until such time as space becomes available in the State Hospital, and (3) Watkins be confined as an emergency patient at either the North Sunflower County Hospital or the South Sunflower County Hospital until space became available at the State Hospital.

¶7. Thirty-three (33) days later[1], on July 29, 1992, the Special Master submitted a report to the chancellor wherein he recited the procedural history of the case and stated that the State Hospital's attorneys "were reviewing the matter to see whether or not they were going to admit Mr. Watkins." The Special Master's report concluded by requesting that the chancellor enter an order for the Director of the Mississippi State Hospital, Mr. Joe F. Blakeney, "to show cause why he has not admitted Mr. Watkins; why he should not be held in contempt of this Court and to have the matter set for hearing before the chancellor at the earliest possible date."

¶8. On July 31, 1992, the chancellor accepted the Special Master's recommendation and scheduled a show cause hearing for August 7, 1992. Pursuant to the chancellor's July 31, 1992, order, both the Director of the State Hospital and the Attorney General were issued citations to appear at the contempt hearing. Neither the summons issued to the Director of the State Hospital nor the Attorney General gave

any indication that the constitutionality of a state statute was being challenged or that the court was contemplating construing the constitutionality of a state statute in the absence of a challenge.

¶9. At the August 7, 1992 hearing, the court announced that the purpose of the hearing was for the Director of the State Hospital at Whitfield to show cause why he should not be held in contempt for failure to abide by the Court's June 26, 1992 Commitment Order. The court then called Dr. William Wade Dowell, a Family Medicine Physician, as the court's witness. Attorney Carol Thweatt, an attorney for the Department of Mental Health, was present at the hearing representing the Mississippi State Hospital and its Director, Mr. Joe F. Blakeney. No one from the Attorney General's Office appeared at the contempt citation hearing.

¶10. At the conclusion of the hearing, the chancellor issued a bench opinion in which he concluded that section 41-21-77 of the Mississippi Code of 1972, which provided that no person shall be delivered or admitted to the State Hospital until the director determines that facilities and services are available, is violative of section 86 of the Mississippi Constitution of 1890, which reads as follows:

> It shall be the duty of the legislature to provide by law for the treatment and care of the insane; and the legislature may provide for the care of the indigent sick in the hospitals in the state.

This conclusion was predicated on the fact that state law does not specifically provide for the care of patients between the time of the commitment orders and the time of delivery and admission to the State Hospital. The court further found that Sunflower and other counties did not have the funds and facilities to properly care for mental patients between the time of commitment and admission and therefore could not meet the constitutional requirements imposed by the federal and state constitutions. The court ordered that Mr. Watkins be forthwith delivered to the State Hospital, but did not find the Director, Mr. Blakeney, to be in contempt of court.

### DID THE CHANCERY COURT ABUSE ITS DISCRETION BY *SUA SPONTE* DECLARING A STATE STATUTE UNCONSTITUTIONAL WITHOUT GIVING NOTICE TO THE ATTORNEY GENERAL TO APPEAR AND DEFEND THE CONSTITUTIONALITY OF THE STATUTE.

¶11. The issue confronting the court below could have and should have been disposed of without the necessity of ruling on the constitutionality of the statute. "Courts have a solemn duty to avoid passing upon the constitutionality of any law . . . unless compelled to do so by an issue squarely presented to and confronting a court in a particular case." *Jones v. Harris*, 460 So. 2d 120, 122 (Miss. 1984)(**quoting *Western Line Consol. Sch. Dist. v. Greenville Mun. Separate Sch. Dist.***, 433 So. 2d 954, 958 (Miss. 1983)). This is not to say that courts do not have the power to review legislative enactments. Although such a power exists, it may only be exercised affirmatively where the legislation under review is "in palpable conflict with some plain provision of the . . . constitution." *Hart v. State*, 87 Miss. 171, 176, 39 So. 523, 524 (1905). "The rule we follow is that a statute is **presumed** to be constitutional." *Harris*, 460 So. 2d at 122 (emphasis in original). The party challenging the constitutionality of a statute must prove his case beyond all reasonable doubt before a court has authority to void a statute in whole or in part. *Mississippi Power Co. v. Goudy*, 459 So. 2d 257, 263 (Miss. 1984).

¶12. Although the lower court had the authority to declare the statute unconstitutional, its actions were improper because the issue could have been easily resolved without reaching the constitutionality of the statute. At the August 7 hearing, Mr. Blakeney testified that Watkins never lost his place on the waiting list.

During his testimony, Mr. Blakeney told the procedure followed at the State hospital. All the commitments are screened to determine the appropriateness of the commitment -- whether it should be a psychiatric commitment or a drug-alcohol commitment. It was Mr. Blakeney's testimony that often people are committed to the psychiatric unit when they should be committed to the drug and alcohol unit and vice versa. This was the case with Watkins. He was placed on the waiting list. Mr. Blakeney requested that the Sunflower Chancery Court amend its order to commit Watkins to the drug and alcohol unit. This request was denied. Mr. Watkins never lost his place on the waiting list. Mr. Blakeney further testified that the State Hospital was prepared to take Watkins at the time of the hearing. In fact, at the conclusion of the hearing Watkins was taken to the State Hospital. The issue of whether the Department of Mental Health or its Director was in contempt of court was resolved in favor of the Department. Thus, it was not required for the chancellor to find a portion of section 41-21-77 unconstitutional and was error for him to do so.

¶13. The State also argues that it was error for the chancellor, *sua sponte*, to declare a portion of a state statute unconstitutional without providing any notice or indication that he was considering the constitutionality of the statute. Section 7-5-1 of the Mississippi Code Annotated requires the State Attorney General to "intervene and argue the constitutionality of any statute when notified of a challenge thereto, pursuant to the Mississippi Rules of Civil Procedure." Miss. Code Ann. § 7-5-1 (1991 rev. ed.). Mississippi Rules of Civil Procedure Rule 24(d) authorizes the Attorney General to intervene in any action in which the constitutionality of a state statute is called into question. The party asserting the unconstitutionality of the statute shall notify the Attorney General in sufficient time as to afford him an opportunity to intervene and argue the question of constitutionality. Miss. R. Civ. P. 24(d).

¶14. The only notice afforded the Attorney General in the case at bar was notice of a show cause hearing. Even if the chancellor was correct in challenging the statute, he erred by not providing the Attorney General with proper notice. The controlling statute and rule require that notice of the challenge be given. The absence of such notice is reversible error.

## CONCLUSION

¶15. The chancellor abused his discretion by *sua sponte* declaring a portion of a state statute unconstitutional when the issue could have been and was resolved without the necessity of reaching the constitutional validity of the statute. The matter was resolved without reaching the constitutionality of our laws. Therefore, the decision of the chancellor declaring portions of section 41-21-77 unconstitutional is reversed. This Court will not determine the constitutionality of a statute where it has not been properly challenged. Thus, section 41-21-77 remains cloaked in its presumption of constitutionality. ***See Jones v. Harris***, 460 So. 2d 120, 122 (Miss. 1984).

**¶16. REVERSED AND RENDERED.**

**PRATHER AND SULLIVAN, P.JJ., ROBERTS, SMITH AND MILLS, JJ., CONCUR. BANKS, J., CONCURS WITH SEPARATE OPINION JOINED BY LEE, C.J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**BANKS, JUSTICE, CONCURRING:**

¶17. I concur with the result reached by the majority insofar as it vacates that part of the order of the chancery court which declares Miss. Code Ann. 1972 § 41-21-77 unconstitutional. Rather than reach that result based upon Miss. R. Civ. P. 24(d), however, I rely upon our established precedent in *Estate of Miller v. Miller*, 409 So. 2d 715 (Miss. 1982). In that case, we held that a trial court may not declare a state statute unconstitutional *sua sponte*.

¶18. This case is especially problematic in that it was not litigated in the usual adversarial manner. The respondent, Watkins, was the person being committed. His interests were not necessarily antagonistic to the department of mental health, the respondent to the *sua sponte* show cause order. Indeed, he made no appearance in those proceedings, nor has he made an appearance before this Court. There is no appellee's brief.

¶19. The Attorney General, on the other hand, was notified of the proceedings. A copy of the show cause order was served on that office at the direction of the chancery court. The Attorney General chose to allow the DHS to be represented by counsel regularly assigned to the Department of Mental Health. The chancery clerk related a telephone conversation with the office of the Attorney General in which it was verified that assigned counsel represented the office of the Attorney General in the proceedings. In response to that announcement, it was reported to the court by assigned counsel that an Assistant Attorney General acknowledged service and was available to consult with assigned counsel by telephone during the proceedings. The trial court questioned the constitutionality of the statute during those proceedings. The attorney representing the State had no ready response, as can be expected, considering that the issue had not been pled or otherwise raised beforehand. Following the bench ruling, however, no effort was made at the trial court level to assert the constitutional validity of this statute through a motion for new trial or to alter or amend the judgment. Miss. R. Civ. P. 59.

¶20. It follows, in my view, that Miss. R. Civ. P. 24(d) does not govern this situation. That rule speaks to notification by parties and is designed to give the Attorney General notice and an opportunity to intervene. Here the Attorney General had notice of the proceedings and participated. The problem is that the court acted *sua sponte* in declaring a statute unconstitutional in contravention of our established precedents. *Tax Commission v. One 1984 Black Mercury*, 568 So. 2d 707 (Miss. 1990); *Estate of Miller v. Miller*, 409 So. 2d 715 (Miss. 1982); *State ex rel. Carr v. Cabana Terrace Inc*., 247 Miss. 26, 153 So. 2d 257 (1963).

¶21. The real parties in interest here appear to be the taxpayers of Sunflower County and the taxpayers in the state at large. The dispute involves the expense of maintaining patients who are committed when space at a mental institution is lacking. As the majority notes, the issue of Mr. Watkins's admission could have been answered without reference to the constitution. In some other circumstance, the constitutional question may be unavoidable. We should await that day to pass upon the issue. Then, perhaps, we will have the benefit of truly adversarial proceedings.

¶22. For the foregoing reasons, I would vacate that part of the order of the chancery court which declares the statute unconstitutional.

**LEE, C.J., JOINS THIS OPINION.**

 **McRAE, JUSTICE, DISSENTING:**

¶23. While the better practice is for the trial court to provide the Attorney General with advance notice of its intention to rule on the constitutionality of a statute, I disagree with the majority's opinion that the Attorney General did not receive adequate notice in this case.

¶24. M.R.C.P. 24(d) requires a **party** challenging the constitutionality of a statute to provide notice to the Attorney General so as to afford him the opportunity to intervene. The Comment to Rule 24(d) provides that:

> Notice to the Attorney General is mandatory even if the Court thinks the Constitutional question frivolous, but failure to give the notice does not deprive the court of jurisdiction to decide the case.

Service of notice on the Attorney General therefore is not jurisdictional. *See Oak Center Creamery Co. v. Grobe*, 264 Minn. 435, 119 N.W. 729, 730 (1963)(where rule analogous to M.R.C.P. 24 (d) previously held to be jurisdictional, party's failure to notify Attorney General that appeal was direct attack on constitutionality of statute, dismissal of appeal was warranted). In this case, the Attorney General had notice of the proceedings and was represented by an attorney from the Mental Health Department. The chancellor, therefore, made its ruling in the presence of Mental Health's attorney, Carol Thweatt. No objections were made to the pronouncement at that time nor did the Attorney General's Office file any post-trial motions to modify or strike portions of the order prior to bringing this appeal.

¶25. It further was not, as the majority suggests, an abuse of discretion amounting to reversible error for the chancellor to enter a commitment order for Watkins, to refuse to hold the Director of the State Hospital in contempt, and in his bench opinion, to challenge a statutory clause that clearly thwarts the constitutional mandate that the legislature provide for the care and treatment of the mentally ill as well as the chancery court's authority to timely enter commitment orders.

¶26. Accordingly, I dissent.

1. Mr. Watkins had been in jail and then a county hospital during this time. Dr. Dowell testified that his conditioned had worsened considerably during this time. He further testified that this might have been avoided had he been given the proper treatment.