KING, C.J.,
for the Court.
¶ 1. On January 24, 2005, Joseph T. Dimaio was convicted by a Tallahatchie County Circuit Court jury of two counts of burglary of a church, two counts of petit larceny, and one count of felony malicious mischief. Dimaio raises the following issue on appeal, which we quote verbatim.
I. APPELLANT WAS DENIED A FUNDAMENTALLY FAIR TRIAL AS GUARANTEED BY THE UNITED STATES CONSTITUTION AND THE MISSISSIPPI CONSTITUTION. BECAUSE:
a) THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT’S MOTION TO SUPPRESS THE WARRANT BASED SEARCH OF THE APPELLANT’S HOME
b) THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT’S MOTION TO SEVER COUNTS 1 AND 2 OF THE INDICTMENT FROM COUNTS 3, 4, AND 5
c) THE TRIAL COURT ERRED BY DENYING APPELLANT’S PROPOSED JURY INSTRUCTION 7(A)
d) THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT’S MOTION TO DECLARE § 97-17-33(2), § 97-17-41(l)(B) AND § 97-17-43(2) [OF THE] MISSISSIPPI CODE OF 1972 (ANN.) VOID
*584 II. THE APPELLANT WAS PREJUDICED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL:
a) THE APPELLANT’S COUNSEL FAILED TO INTERVIEW WITNESS KATHRYN BANKSTON TO DETERMINE THAT SHE WAS NOT AN EYEWITNESS TO EVIDENCE AS HAD BEEN ASSERTED IN THE AFFIDAVIT USED TO OBTAIN A SEARCH WARRANT.
b) THE APPELLANT’S COUNSEL FAILED TO MOVE FOR A CHANGE OF VENUE FOLLOWING NEWSPAPER COVERAGE OF THE CRIME.
Finding no error, we affirm.
FACTS
¶ 2. On May 2, 2004, members of the First Presbyterian Church of Charleston discovered that someone had broken into the fellowship hall and taken a television, a DVD player, and a CD player. William Sanders, a church elder, reported the break-in to the Charleston Police Department. Five days later, the church was broken into again. This time, the church was significantly vandalized. A fire extinguisher had been sprayed all over the nursery, hallway and sanctuary. “God hates you,” was spray-painted on the fellowship hall, and “666” was spray-painted on the altar cloth. Also, pages had been ripped from the pulpit Bible which dated back to the 1800s and was the only item which survived a fire that destroyed the original church. A VCR, a cordless telephone, a lamp, and some flower vases were taken during the May 7 break-in.
¶ 3. Brandon Hodges, an investigator for the Charleston Police Department was assigned to the case. After receiving several tips, Hodges obtained a search warrant to search Dimaio’s home, which was located directly behind First Presbyterian Church. On May 14, 2004, Hodges and Officer John Page executed the search warrant. They found the vases, cordless phone and television that were taken from the church in Dimaio’s home. They also found bank statements and other paperwork as well as the torn and burnt pages from the pulpit Bible in Dimaio’s home. During the execution of the search warrant, Dimaio admitted to Hodges that he had broken into the church, but claimed that he only took some snacks.
¶ 4. Dimaio and his friend, a minor, were arrested for the break-ins. Dimaio’s friend was fifteen years old at the time of the incidents and was processed in youth court. At Dimaio’s trial, the friend testified that he participated in the May 7 break-in with Dimaio. He testified that they sold some of the items that they stole from the church but were unable to sell the television, cordless telephone, vases, and offering plate. The offering plate, however, was put to use as an ashtray, and one of the vases was filled with flowers and given to Dimaio’s mother for Mothers’ Day.
ISSUES AND ANALYSIS

Motion to Suppress

¶ 5. Dimaio argues that the evidence found in his home during the execution of a search warrant should have been suppressed due to the lack of probable cause. The State counters that the issue is procedurally barred because Dimaio failed to include the complained of search warrant in the record. However, the transcript from the hearing on the motion to suppress in which testimony was given regarding the underlying facts and circumstances upon which the search warrant was based has been made part of the *585 record. We will therefore address the issue.
¶ 6. In reviewing a motion to suppress, this Court will only reverse the trial court’s findings if they are clearly erroneous or against the overwhelming weight of the evidence. Walker v. State, 913 So.2d 198, 224-25(¶ 87) (Miss.2005) (citing Hunt v. State, 687 So.2d 1154, 1160 (Miss.1996)). In determining whether the issuance of a search warrant was proper, this Court must determine whether the issuing judge had a substantial basis for determining that, based on the officer’s affidavit of underlying facts and circumstances, probable cause existed to issue the warrant. Petti v. State, 666 So.2d 754, 757 (Miss.1995) (citing Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). “Probable cause exists when facts and circumstances within an officer’s knowledge, or of which he has reasonably trustworthy information, are sufficient within themselves to justify a man of average caution in the belief that a crime has been committed and that a particular person committed it.” Id. Probable cause has been defined as “more than a bare suspicion but less than evidence that would justify condemnation.” Foley v. State, 914 So.2d 677, 686(¶ 13) (Miss.2005) (quoting State v. Woods, 866 So.2d 422, 425-26(¶ 11) (Miss.2003)). Whether probable cause exists is based on a totality of the circumstances. Petti, 666 So.2d at 757.
¶ 7. At the suppression hearing, Hodges testified that the underlying facts and circumstances upon which the search warrant was based included the following information. On May 7, 2004 at approximately 1:00 a.m., Haley Heafner was driving home from work and saw Dimaio and his friend in the middle of the street near the church. Kathryn Bankston, a Charleston High School student, had previously seen Dimaio carve “God hates you all” on her ex-boyfriend’s bedroom wall. Hope Cox, another Charleston High School student, told Hodges that Dimaio possessed a CD player that matched the description of the CD player stolen from the church. Finally, on May 13 at approximately 8:00 p.m., Laura Coker, one of Dimaio’s neighbors, witnessed Dimaio exit a black vehicle with its headlights off, retrieve an object from underneath the seat, and enter his home through a hole in the fence running behind his house. The black vehicle proceeded to drive away with its headlights still turned off.
¶ 8. Although the information provided by Coker is tenuous at best, and the information provided by Heafner would be more valuable had Dimaio not lived in such close proximity to the church, we cannot say that the issuing judge did not have a substantial basis for determining that probable cause existed based on the totality of the circumstances. The information obtained by Hodges, when viewed as a whole, would reasonably lead an officer to believe that evidence material to a criminal investigation would be found in Dimaio’s home. Therefore, this issue fails.

Motion to Sever

¶ 9. A trial court’s denial of a motion to sever multiple counts in a single indictment is reviewed for abuse of discretion. Rushing v. State, 911 So.2d 526, 532(¶ 12) (Miss.2005). Mississippi Code Section 99-7-2 (Rev.2000) provides:
Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
In addition to the five counts of which Dimaio was convicted, the original indict *586 ment contained two additional charges stemming from the discovery of marijuana and marijuana paraphernalia in Dimaio’s home during the execution of the search warrant. The trial court severed these two counts, finding that those offenses were not a part of the same acts or transactions involving the church burglaries, nor were they part of a common scheme or plan. The trial court found that the five counts relating to the church burglaries were, however, part of a common scheme or plan.
¶ 10. The supreme court established the following three factors for lower courts to consider when determining whether a multi-count indictment is proper: (1) whether the time period between the occurrences is insignificant, (2) whether the evidence proving each count would be admissible to prove each of the other counts, and (3) whether the crimes are interwoven. Rushing, 911 So.2d at 533(¶ 14) (citing Corley v. State, 584 So.2d 769, 772 (Miss.1991)). At the pretrial hearing on his motion to sever, Dimaio attacked only the time period factor, arguing that since one of the church burglaries occurred on May 2 and the other on May 7, they were too far apart to be part of a common scheme or plan. The Rushing court stated the time factor must be considered together with the totality of events, and that there is no bright line test for determining whether the amount of time is significant or insignificant. Id. at 536(¶ 17). The court went on to find that four counts of prescription forgery which occurred at two separate pharmacies over a five month period were properly charged under a single indictment. Id. at 537(¶ 21).
¶ 11. After reviewing the record, we find that the trial court was correct in finding that the two burglaries, which occurred five days apart and involved the same establishment, as well as both acts of petit larceny and malicious mischief which occurred during the burglaries, were all part of a common scheme or plan. Accordingly, the trial court was correct in refusing to sever counts one and two from counts three, four and five.

Jury Instruction D-7(A)

¶ 12. In reviewing jury instruction issues, this Court reads the instructions together as a whole. Miller v. State, 919 So.2d 1137, 1141(¶ 12) (Miss.Ct.App.2005). No reversible error will be found to exist if, when read together, the instructions correctly state the law and effectuate no injustice. Id.
¶ 13. Refused instruction D-7(A) stated:
This provision is not designed to relieve you from the performance of an unpleasant duty, but is intended to prevent a miscarriage of justice if the evidence fails to prove the original charges of Burglary of a Building Other than a Dwelling, a church, a place of worship, Petit Larceny, and Malicious Mischief, but does justify for the lesser crime of Receiving Stolen Property. However, notwithstanding this right, it is your duty to accept the law as given to you by the Court, and if the facts warrant a conviction of the charges of Burglary of a Building Other Than a Dwelling, a church, a place of worship, in Counts 1 & 3, Petit Larceny in Counts 2 & 4, and Malicious Mischief in Count 5, then it is your duty to make such finding uninfluenced by your power to find a lesser offense.
The trial court refused the instruction for the following reasons; (1) the instruction was not in proper form because receipt of stolen property is not a lesser offense of all three of the distinct crimes listed in the instruction, (2) the instruction lacked evi-dentiary foundation, and (3) the instruction *587 would be confusing and misleading to the jury.[1]
¶ 14. Trial counsel argued that the instruction should be granted as a lesser-related offense instruction, whereas appellate counsel makes a completely different argument. Appellate counsel argues that one cannot be charged with entering a building with intent to steal and stealing that which was intended. We decline to discuss the merits of this new argument since it was not presented to the trial court and has nothing to do with refused instruction D-7(A). Thorson v. State, 895 So.2d 85, 104(¶ 43) (Miss.2004). However, we briefly note that the trial court was correct in refusing any instruction on receipt of stolen property because lesser-related offense instructions should not be granted when, “taking the evidence in the light most favorably to the accused [,] no reasonable jury could find the defendant guilty of the lesser related offense.” Ellis v. State, 778 So.2d 114, 118(¶ 15) (Miss.2000) (citing Giles v. State, 650 So.2d 846, 854 (Miss.1995)). Considering Hodges testimony that Dimaio admitted breaking in to the church, the friend’s testimony relaying a detailed account of the events, together with all of the evidence found in Dimaio’s home, no reasonable juror could have found Dimaio guilty of receiving stolen property. This issue is without merit.

Constitutionality of Mississippi Code Annotated Sections 97-17-33(2), 97-17-41(1)(B) and 97-17-43(2)

¶ 15. Among Dimaio’s post-trial motions was a motion to declare Mississippi Code Annotated Sections 97-17-33(2), 97-17—41(1)(B) and 97-17-43(2) unconstitutional as violative of the Establishment Clause of the First Amendment. Sections 97-17-33(2) sets the maximum penalty for the burglary of any established place of worship at fourteen years of incarceration, whereas the maximum penalty for the burglary of any other non-dwelling building is seven years incarceration. Section 97-17-43(2) sets the maximum penalty for petit larceny committed in an established place of worship at one year imprisonment in the county jail, a fine not to exceed $2,000, or both. The penalty for petit larceny committed elsewhere carries a maximum penalty of six months imprisonment in the county jail, a fine not to exceed $1,000, or both. Dimaio was not charged with violating Section 97-17-41(1)(B), grand larceny of an established place of worship, and therefore has no standing to argue its constitutionality. However, the following analysis applies equally to that statute.
¶ 16. There is a presumption in this state that statutes are constitutional. State v. Watkins, 676 So.2d 247, 249 (Miss.1996) (citing Jones v. Harris, 460 So.2d 120, 122 (Miss.1984)). One challenging the constitutionality of a statute is required to show that the statute is unconstitutional beyond a reasonable doubt. Edwards v. State, 800 So.2d 454, 460(¶ 10) (Miss.2001) (citing Vance v. Lincoln County Dep’t of Pub. Welfare, 582 So.2d 414, 419 (Miss.1991)).
117. The Establishment Clause of the First Amendment to the United States Constitution provides that “Congress shall make no law respecting an establishment of religion.” U.S. Const., amend. I. “The three main evils against which the Establishment Clause was intended to afford *588 protection [are] ‘sponsorship, financial support, and active involvement of the sovereign in religious activity.’ ” Lemon v. Kurtzman, 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (quoting Walz v. Tax Commission, 397 U.S. 664, 668, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970)). The statutes in question do not in any way involve religious activity, much less state sponsorship, financial support, or active involvement thereof. The statutes are located in the chapter of the Mississippi Code prohibiting crimes against property. The purpose of the statutes is simply to deter criminal activity. The fact that the statutes in question provide harsher penalties for crimes committed in places of worship does not amount to government endorsement of religion. Rather the harsher penalties reflect a common view that crimes committed in places of worship are more repugnant to the community. Accordingly, we find it unnecessary to conduct a full Lemon test analysis, since it is clear from the face of the statutes that they do not represent government endorsement of religion. This issue is without merit.

Ineffective Assistance of Counsel

¶ 18. Dimaio argues that he received ineffective assistance of counsel due to counsel’s alleged failure to interview a particular witness and seek a change of venue. In an attempt to support his argument, Dimaio attached to his appellate brief appendixes consisting of a newspaper article about the church burglaries and a transcribed telephone conversation between appellate counsel and a trial court witness. However, on January 31, 2006, this Court ordered the appendixes and any references thereto in the brief be stricken as improper since the materials were not admitted into evidence at trial. Dimaio’s claim of ineffective assistance is not proper on direct appeal since he cannot offer any support from the record to substantiate his claim. Wilcher v. State, 863 So.2d 719, 761 (¶ 162) (Miss.2003) (citing Read v. State, 430 So.2d 832, 837 (Miss.1983)). Dimiao’s ineffective assistance claim may be properly addressed in a post-conviction relief proceeding, where he will have the benefit of post-trial affidavits to support his argument. Havard v. State, 928 So.2d 771, 786(¶ 18) (Miss.2006).
¶ 19. THE JUDGMENT OF THE TALLAHATCHIE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I BURGLARY OF A CHURCH AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, COUNT II PETIT LARCENY AND SENTENCE OF ONE YEAR IN THE TALLAHATCHIE COUNTY JAIL, COUNT III BURGLARY OF A CHURCH AND SENTENCE OF FIVE YEARS ON POST-RELEASE SUPERVISION, COUNT IV PETIT LARCENY AND SENTENCE OF ONE YEAR IN THE TALLAHATCHIE COUNTY JAIL, COUNT V FELONY MALICIOUS MISCHIEF AND SENTENCE OF FIVE YEARS POST-RELEASE SUPERVISION, WITH COUNTS I, III, AND V TO BE SERVED CONSECUTIVELY AND COUNTS II AND IV TO BE SERVED CONCURRENTLY WITH COUNT I IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTH-WICK, IRVING, CHANDLER, GRIF-FIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.

. Regarding the trial court’s determination that the instruction lacked foundation in the evidence, Dimaio's mother did testify that she let her son borrow money to purchase a television, telephone, and two vases from his minor friend. However, the court noted that no evidence was presented to show that Dimaio only received the DVD player, CD player, VCR, bronze lamp, or paperwork.