# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 95-KA-00162 COA

**THOMAS WAYNE HAMM AND TERRI WRIGHT HAMM**  **APPELLANTS**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

| | |
|---|---|
| DATE OF JUDGMENT: | 02/10/95 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID M. ISHEE FOR THOMAS WAYNE HAMM |
| | MICHAEL L. FONDREN FOR TERRI WRIGHT HAMM |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: PAT FLYNN |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CRIMINAL -- POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA WITH INTENT TO DISTRIBUTE AND POSSESSION OF METHAMPHETAMINE |
| TRIAL COURT DISPOSITION: | BOTH APPELLANTS ADJUDGED GUILTY ON BOTH COUNTS. THOMAS WAYNE HAMM WAS SENTENCED TO PAY A FINE OF $100,000, TO PAY A LAB FEE OF $125, AND TO SERVE TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA WITH INTENT TO DISTRIBUTE AND TO PAY A FINE OF $10,000, TO PAY A LAB FEE OF $125, AND TO SERVE THREE YEARS FOR POSSESSION OF METHAMPHETAMINE WITH BOTH SENTENCES TO RUN CONCURRENTLY. |
| | APPELLANT TERRI WRIGHT HAMM WAS |

|  | SENTENCED TO PAY A FINE OF $10,000, TO PAY A LAB FEE OF $125 AND TO SERVE FIVE YEARS FOR POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA WITH INTENT TO DISTRIBUTE AND TO PAY A FINE OF $1,000, TO PAY A LAB FEE OF $125, AND TO SERVE THREE YEARS FOR POSSESSION OF METHAMPHETAMINE WITH BOTH SENTENCES TO RUN CONCURRENTLY. |
|---|---|
| DISPOSITION: | AFFIRMED-2/10/98 |
| MOTION FOR REHEARING FILED: | 8/4/98 |
| CERTIORARI FILED: | 11/9/98 |
| MANDATE ISSUED: | 4/15/99 |

BEFORE BRIDGES, C.J., COLEMAN, AND SOUTHWICK, JJ.

COLEMAN, J., FOR THE COURT:

The grand jury of Jackson County returned a two-count indictment against the appellants, Thomas Wayne Hamm and Terri Wright Hamm, husband and wife. Count I of the indictment charged the Hamms with possession of more than one kilogram of marijuana, a controlled substance, with intent to distribute, and Count II of the indictment charged them with possession of methamphetamine, a controlled substance. The Hamms were tried together, and the jury found them guilty of both counts of the indictment. The trial judge sentenced Thomas Hamm to serve twenty years in the custody of the Mississippi Department of Corrections and to pay a fine of $100,000 on Count I and to serve three years in the custody of the Mississippi Department of Corrections and to pay a fine of $10,000 on Count II. Hamm's three year sentence for Count II was to run concurrently with the twenty-year sentence for Count I. Terri Hamm was sentenced to serve five years in the custody of the Mississippi Department of Corrections and to pay a fine of $10,000 on Count I and to serve three years in the custody of the Mississippi Department of Corrections and to pay a fine of $1,000 on Count II. Her sentence to serve three years on Count II was to run concurrently with her sentence to serve five years on Count I. Terri Hamm has filed her separate appeal in which she has presented to this Court for its review and resolution eight issues. In his appeal, Thomas Hamm has presented seven issues for our review and resolution and has joined in all issues which his wife has presented to this Court in her appeal pursuant to Rule 28(i) of the Mississippi Rules of Appellate Procedure.[1] However, we resolve all of their issues against the Hamms and affirm the trial court's judgments of their convictions and their sentences.

## II. ISSUES

We quote the Hamms's issues verbatim from their briefs:

**A. Thomas Wayne Hamm's Issues**

**I. THE JURY'S VERDICT WAS IN ERROR DUE TO THE FACT THAT NO CREDIBLE EVIDENCE WAS PRESENTED PROVING BEYOND A REASONABLE DOUBT THAT THE APPELLANT HAD DOMINION AND CONTROL OVER THE CONTRABAND IN QUESTION.**

**II. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE DUE TO THE FACT THAT THE APPELLANT'S ALLEGED CONSENT WAS NOT FREELY, KNOWINGLY AND VOLUNTARILY GIVEN.**

**III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED DURING THE SEARCH CONDUCTED PURSUANT TO THE AUTHORITY GIVEN TO THE MISSISSIPPI PUBLIC SERVICE COMMISSION BY STATUTE WHICH VIOLATES THE APPELLANT'S CONSTITUTIONAL RIGHTS.**

**IV. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO INTRODUCE VARIOUS ITEMS ALLEGED TO BE INVOLVED IN DRUG ACTIVITY WITHOUT SUBSTANTIATION OF THIS FACT.**

**V. THE TRIAL COURT ERRED IN ALLOWING APPELLANT'S MOTION FOR MISTRIAL WHEN THE PROSECUTOR IMPLIED DURING CLOSING ARGUMENTS THAT DEFENSE COUNSEL HAD ATTEMPTED TO HIDE EVIDENCE FROM THE JURY.**

**VI. THE TRIAL COURT ERRED IN ALLOWING A NOTE ALLEGEDLY FOUND ON THE APPELLANT INTO EVIDENCE WHILE THE AUTHOR OF THE NOTE WAS UNKNOWN AND AN ILLEGIBLE AND UNSUBSTANTIATED COPY WAS ADMITTED INTO EVIDENCE.**

**VII. THE APPELLANT'S SENTENCE WAS DISPROPORTIONATE TO THAT OF HIS CO-DEFENDANT AND THIS MATTER SHOULD BE REMANDED FOR RESENTENCING.**

**VIII. THE APPELLANT HEREBY JOINS IN ON ALL ISSUES RAISED BY THE CO-DEFENDANT, TERRI WRIGHT HAMM, AND INCORPORATES ALL PLEADINGS CONTAINED IN THAT APPEAL BY REFERENCE HERETO UNDER MISSISSIPPI SUPREME COURT RULE 28(i).**

**B. Terri Wright Hamm's Issues**

**I. WHETHER THE JURY'S VERDICT WAS IN ERROR SINCE THERE WAS NO CREDIBLE EVIDENCE OF MRS. HAMM'S ACTUAL POSSESSION AND CONTROL OF THE CONTRABAND.**

**II. WHETHER THE TRIAL COURT ERRED IN DENYING MRS. HAMM'S MOTION TO SUPPRESS EVIDENCE WITHOUT MRS. HAMM'S HAVING THE ABILITY TO CONSENT TO THE SEARCH OR CONTROL OF THE CONTRABAND.**

**III. WHETHER THE TRIAL COURT ERRED IN DENYING MRS. HAMM'S MOTION TO SUPPRESS EVIDENCE BECAUSE MR. HAMM'S ALLEGED CONSENT WAS NOT FREELY AND KNOWINGLY MADE.**

**IV. WHETHER THE TRIAL COURT ERRED IN DENYING MRS. HAMM'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE SEARCH CONDUCTED WAS MADE WITHOUT PROPER CONSENT AND PROBABLE CAUSE.**

**V. WHETHER THE TRIAL COURT ERRED IN DENYING MRS. HAMM'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE SEARCH CONDUCTED PURSUANT TO THE AUTHORITY GIVEN TO THE MISSISSIPPI PUBLIC SERVICE COMMISSION BY STATUTE VIOLATES MRS. HAMM'S CONSTITUTIONAL RIGHTS.**

**VI. WHETHER THE TRIAL COURT ERRED IN DENYING MRS. HAMM'S MOTION FOR A MISTRIAL WHEN THE PROSECUTOR DURING HIS CLOSING ARGUMENT IMPLIED THAT DEFENSE COUNSEL WAS ATTEMPTING TO HIDE THE TRUTH FROM THE JURY BY MAKING AN OBJECTION.**

**VII. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING MRS. HAMM'S JURY INSTRUCTIONS NUMBERS D2-13, D2-14, AND THE LAST PARAGRAPH OF D2-12.**

**VIII. WHETHER THE TRIAL COURT ERRED IN ALLOWING A NOTE ALLEGEDLY FOUND ON MR. HAMM FROM BEING ADMITTED INTO EVIDENCE WHEN THE AUTHOR OF THE NOTE WAS UNKNOWN AND A COPY WAS PRESENTED, AND NOT THE ORIGINAL.**

## I. FACTS

On the evening of August 26, 1993, Sergeant Howard E. Potts and Captain Randy Sibley, both of Troop K of the Mississippi Highway Patrol (MHP), were working on a radar detail in conjunction with Inspector Robert Bruce Ford, Jr., and Inspector Wayne Dupont with the Mississippi Public Service Commission (MPSC) on Interstate 10 in Jackson County, Mississippi. The MPSC and MHP's joint activity was a federally-funded operation in which MHP officers would stop a speeding eighteen-wheel tractor-trailer truck as a precursor to MPSC inspectors' inspection of the stopped eighteen-wheeler and its cargo to insure that the truck was operating lawfully.

At approximately 10:30 p.m. that night, Sergeant Potts and Captain Sibley, who waited in Sergeant Potts's patrol car beside Interstate 10 in Jackson County, used a radar device to measure the speed of an eighteen-wheel tractor-trailer truck, which was traveling east on Interstate 10, at 71 miles per hour. The speed limit was 65 miles per hour. Thomas Hamm was driving, and his wife, Terri Hamm,

was riding in the right seat of the speeding truck. Rather than stop the truck, the state troopers waited until Hamm drove it into the Orange Grove weighing station off the south side of the Interstate, where MPSC Inspectors Ford and Dupont were waiting.

As Hamm drove his rig onto the scales, Sergeant Potts pulled his patrol car beside Hamm's truck and signaled the scales' operator to turn on a certain light which directed Hamm to drive his rig around to the rear of the scales building so that Inspectors Ford and Dupont might inspect the truck to determine if Hamm was lawfully operating it. At first Sergeant Potts saw only the driver in the Peterbilt truck, but after the truck pulled around the scales building and stopped over a pit, which could be used by the inspectors to inspect its bottom, Potts saw that Terry Hamm was riding in the passenger's seat of the truck. Captain Sibley issued a warning citation for speeding to Thomas Hamm, who owned both the Peterbilt and the trailer which it was pulling. After Sibley issued the warning citation to Hamm, Inspector Ford began his inspection of Hamm's rig.

Ford obtained from Thomas Hamm the paperwork which Ford knew that state and federal law required Hamm to have. Included in this paperwork were five bills of lading for Hamm's load of limes and mangoes, which were bound for destinations in Jacksonville and Tampa, Florida. In keeping with his usual custom, Ford asked Hamm if he had a weapon on the truck. Hamm replied, "Well, I have a shotgun," and he produced a sawed-off shotgun for Ford's inspection. After Ford had taken Hamm's "paperwork" to his MPSC car to begin his inspection of it, he recalled that Sergeant Vernon A. Gazzo was working Interstate 10 that night. Ford radioed Gazzo, who was near the Alabama state line, to request his help in establishing whether Thomas Hamm's sawed-off shotgun was of legal length. Gazzo arrived quickly at the weighing station, measured and inspected the shotgun, and determined that it was of legal length.

Because Gazzo noticed that Hamm was nervous and sweating and "missed gaps in what he was telling [him]," he asked Hamm for permission to search his Peterbilt. Hamm gave his permission for Gazzo to search his truck, but advised Gazzo that his wife was in the truck with him. Gazzo then asked Terri Hamm if she would step down from the truck, and both Thomas Hamm and Gazzo then walked to the passenger's side of the truck. When Terri Hamm stepped down from the truck, Gazzo saw in plain view, between the seats, what he recognized to be a one-foot square cutting board, about one inch thick, with a single-blade razor blade and a gray tube lying "right there with it." Once inside the truck, Gazzo searched the closet in the sleeper behind the truck seats, where he found a red tin can. When Gazzo removed the top from the tin, he found an amount of marijuana, which he estimated to weigh "under an ounce" inside the tin.

Inspector Ford, who had been in his MPSC car while he completed his inspection of Hamm's paperwork, heard Gazzo say that there was a cutting board lying on the floor of the truck and that he had found two cigarette butts, which he believed were marijuana, in the ashtray inside the truck. Ford and Inspector Dupont walked from their car to Thomas Hamm and asked Hamm to open the trailer, the doors of which were locked with a padlock. The trailer was a "reefer," or a refrigerated trailer. Hamm unlocked the padlock with his key. Inspector Ford asked Inspector Dupont to enter the trailer to inspect the load for blocking and bracing and to determine if Hamm's load matched Hamm's bills of lading. Another purpose of Dupont's inspection was to insure that the trailer contained no hazardous material.

In the very front of the trailer and in front of a load of limes, which two of the officers were to testify were spoiled, rotten, and molded, Dupont discovered four U-Haul pasteboard boxes, one of which was partially opened but all of which were damp with condensation which had occurred inside the reefer. Inside the four boxes were several packages of marijuana, each of which had been wrapped in heat-shrunk, transparent wrap. When Dupont discovered what was later determined to be 196 pounds of marijuana, he yelled to Inspector Ford, "Put Mr. Hamm under arrest. There is what appears to be marijuana in the front of this truck in U-Haul boxes."

Ford handcuffed Hamm, and Sergeant Potts advised Hamm of his right not to incriminate himself. The officers found a note which contained various dollar figures, numbers, and the terms "lbs.", "1-key", and "71 grams crank". Where the note was found is disputed by Thomas Hamm. After the officers had arrested both Thomas and Terri Hamm, Sergeant Potts drove Hamm's rig to John Fayard Fast Freight, a truck-freight yard in Gulfport, where he left it for the night. The next morning, Sergeant Potts returned to complete the search of the trailer. After the last of the produce was removed from the trailer's far end, Potts discovered a small brown box wrapped in gray duct tape. Potts opened it and found two powdery substances inside, one of which was methamphetamine according to an analysis which Timothy P. Gross, an employee of the State Crime Laboratory, conducted. Potts also found in the trailer a bundle which contained approximately $6,000 worth of currency.

From the foregoing events came the Hamms' joint indictment, trial, conviction, and respective sentences as we related them. We later review those portions of the trial which we find relevant to each of the issues which the Hamms have presented in their separate appeals for our review, analysis, and resolution.

## III. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES

### A. Preliminary matters

This Court elects to review the Hamms's issues in the approximate order in which they would have arisen during the course of their trial. Their issues concern: (1) the search of Thomas Hamm's Peterbilt truck and trailer, (2) the admissibility of certain items into evidence, (3) jury instructions which Terri Hamm requested but the trial judge refused, (4) prosecutorial misconduct during closing argument, (5) the sufficiency of the evidence to support the jury's verdicts of the Hamms' guilt, and (6) the disproportionality of the Hamms's sentences.

### B. The search of the truck's cab and the trailer

### 1. Thomas Hamm's consent to search his truck

We first address Thomas Hamm's second issue and Terri Hamm's third and fourth issues. Thomas Hamm argues that "at the time of this alleged consent, [a]ppellant had not been informed of his constitutional rights and was surrounded by five or more armed and uniformed police officers at the scene." Thus, he concludes that there "is clear and convincing evidence that if in fact any consent was elicited from [Hamm], it was coerced through duress." He cites but two cases to support his position on this issue, and they are *Schneckloth v. Bustamonte*, **412 U.S. 218 (1973)** and *Jones v. State*, **607 So 2d. 23 (Miss. 1991).** Terri Hamm elaborates somewhat on this argument by adding that her

husband's consent was coerced because "Mr. Hamm did not know that he could have refused the search." Mrs. Hamm cites the same two cases in her brief that her husband cites and no others.

In *Schneckloth* the United States Supreme Court upheld a consent to search an automobile during a street encounter in which no Fourth Amendment warnings were given. The Supreme Court explained:

> [I]t would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning. Consent searches are part of the standard investigatory techniques of law enforcement agencies. They normally occur on the highway, or in a person's home or office, and under informal and unstructured conditions. The circumstances that prompt the initial request to search may develop quickly or be a logical extension of investigative police questioning. The police may seek to investigate further suspicious circumstances or to follow up leads developed in questioning persons at the scene of a crime.

*Schneckloth*, 412 U.S. at 231-32. In *Jones*, the Mississippi Supreme Court quoted the foregoing portion of the *Schneckloth* opinion and then explained:

> Consideration must be given to whether the circumstances were coercive, which necessitates attention to whether the person was confronted with many officers or a display of weapons, whether he was in custody and, if so, whether the circumstances of the custody were coercive, and whether the alleged consent was obtained in the course of stationhouse interrogation.

*Jones*, 607 So. 2d at 27.

During the prosecutor's direct examination of Inspector Wayne Dupont, the State moved to admit into evidence the 196 pounds of marijuana, shrink-wrappings taken from the packages of marijuana, the methamphetamine which were found in the trailer, and the cutting board, razor blade, tube, and tin can and contents which MHP Sergeant Gazzo discovered in the cab of Thomas Hamm's Peterbilt. Counsel for both Thomas and Terri Hamm objected to the introduction of the items, and the trial judge conducted what was in effect a suppression hearing on whether they were admissible. The Hamms's counsel argued that these items were the fruit of an illegal search and seizure of Thomas Hamm's truck because Thomas Hamm's consent to Sergeant Gazzo's search had not been given freely and voluntarily. Counsel argued that Thomas Hamm's consent could not be free and voluntary because Sergeant Gazzo requested Hamm's consent in the presence of four or five armed law enforcement officers. They further argued that Hamm did not know that when Sergeant Gazzo asked for his consent to search, Hamm could refuse to give Gazzo his permission.

Neither Thomas nor Terri Hamm testified during their counsel's arguments in support of their motion to suppress the introduction of these items into evidence. Thus, the record contains no evidence that Thomas Hamm felt coerced or intimidated by the presence of the armed MHP and MPSC officers and inspectors. Neither does the record contain Hamm's testimony that he would not have permitted Sergeant Gazzo to search the cab of his truck if he had understood that Gazzo could not search it without his permission. During the State's earlier direct examination, Ford testified without objection: "Officer Gazzo asked Mr. Hamm, 'Do you care, do you mind if I look inside your truck?' [Hamm] said, 'No, not at all. Go ahead.'" Gazzo also testified that Hamm consented to Gazzo's search of the cab of his truck.

It is true that in *Pennick v. State*, **440 So. 2d 547, 551 (Miss. 1983)**, the Mississippi Supreme Court held that in order for a consent to be voluntary, the defendant must be advised of his right not to consent. The supreme court rested its decision, in part, on its interpretation and application of Section 23 of the Mississippi Constitution. However, in *Jones v. State*, **607 So. 2d 23, 28 (Miss. 1991)**, one of the two cases which the Hamms cite in their respective briefs, the Mississippi Supreme Court -- without specifically overruling *Pennick* -- seemingly returned to the "federal" standard when it opined:

> This Court would hold that consent is not valid where the consenter is impaired or has a diminished capacity; otherwise we apply the same test for valid consent as the federal standard and place the burden on the defendant to show impaired consent or some diminished capacity. Consent must be voluntary and absent diminished capacity in order to be valid.

> The State is not required to demonstrate knowledge. *Schneckloth*, 412 U.S. at 249.

*Jones*, **607 So. 2d at 28.** Two of the State's witnesses, Sergeant Gazzo and Investigator Ford, testified that Thomas Hamm gave permission to Sergeant Gazzo to search the cab of his truck, and the record contains no testimony by either of the Hamms that Thomas Hamm permitted Sergeant Gazzo to search the cab's interior only because he was coerced or threatened by any of the officers who were present. Instead, the Hamms ask this Court to infer coercion of Hamm only from the presence of five armed law-enforcement officers. We decline to accept their request.

Gazzo's failure specifically to advise Hamm that he did not have to allow Gazzo to search the cab of his truck does not render Hamm's consent involuntary pursuant to this Court's interpretation of the quotation from *Jones*. Thus, we hold that Hamm's consent for Sergeant Gazzo to search the cab of his truck rendered the search lawful so that the fruits of that search were properly admissible against the Hamms.

Terri Hamm argues that regardless of the consent issue, Sergeant Gazzo had no probable cause to search the cab, yet she cites no authority to support her position on this issue. For this reason alone, we need not review her third issue. *See Ellis v. Ellis*, **651 So. 2d 1068, 1073 (Miss. 1995)** (holding that an unsupported assignment of error will not be considered). The State countered with its argument that Sergeant Gazzo obtained probable cause to search the cab when he saw "in plain view" the cutting board, tube, and razor blade lying on the floor between the seats in the cab because from his experience in law enforcement, Gazzo recognized these objects as being paraphernalia used for the ingestion of cocaine or methamphetamine. Our determination that Hamm's consent to the search of the cab of his truck was freely given renders our resolution of this issue unnecessary.

## 2. Terri Hamm's lack of consent to search her husband's truck

The record supports Terri Hamm's argument that she never consented for Sergeant Gazzo to search her husband's truck. However, she offered no evidence of any interest whatsoever in either the Peterbilt truck or the refrigerated trailer which it pulled. The record is clear that Thomas Hamm owned both the truck and the trailer. In *Turner v. State,* **573 So. 2d 657, 664 (Miss. 1990)**, the defendant was temporarily visiting Mississippi from Chicago and was staying in his cousin's trailer home. After the defendant became a suspect in the case, his cousin gave the police permission to search the trailer and its premises. *Id*. Based on incriminating evidence which the police discovered in

the course of their search, they later arrested Turner. *Id.* The supreme court affirmed the lower court which had found:

> [Cousin] freely gave permission for the officers to search the trailer; that there was no reasonable expectation of privacy in that appellant did not have exclusive possession or control of the premises; that appellant was a guest in [Cousin's] house and not a tenant; and that appellant paid no rent and there was no agreement that he worked for [Cousin] in exchange for rent. [Cousin] verbally gave consent for the search of the trailer. . . .

*Id.* In support of their affirming the trial court's decision to admit the evidence in the absence of Turner's lack of consent to search his cousin's trailer, the Mississippi Supreme Court cited the United States Supreme Court case of *Rakas v. Illinois,* **439 U.S. 128, 134 (1978)**, in which that court held: "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Thus, this Court concludes that Terri Hamm's consent for Sergeant Gazzo to search the cab of her husband's truck was required by neither the Fourth Amendment to the United States Constitution nor Section 23 of the Mississippi Constitution, and it accordingly resolves her third issue against her.

### 3. Whether the statue which authorized MPSC inspectors to search Thomas Hamm's truck is constitutional

Section 77-7-16 of the Mississippi Code of 1972[2] grants the Mississippi Public Service the authority to inspect eighteen-wheel tractor-trailers like the one Mr. Hamm was driving on the night of August 26, 1993. This Court understands the Hamms' arguments to constitute an assault on the constitutionality of this section, but other than Thomas Hamm's reference to *United States v. Darby*, 312 U.S. 100 (1941), in which even Hamm accedes that "the United States Supreme Court granted the United States Congress plenary power to set terms for interstate transportation, so long as Congress did not violate a specific check on this power such as a provision of the Bill of Rights," neither appellant cites authority to support its argument on this issue. Again, we cite *Ellis* as our authority for our not having to review this issue. *See Ellis*, **651 So. 2d at 1073.** Moreover, a statute is presumed to be constitutional. *See State v. Watkins*, **676 So. 2d 247, 249 (Miss. 1996)** (holding that because "[t]he rule we follow is that a statute is presumed to be constitutional," the party who challenges the constitutionality of a statute must prove his case beyond all reasonable doubt). In *New York v. Burger*, **482 U.S. 691 (1987)** the United States Supreme Court held that the New York statute which authorized warrantless inspections of vehicle dismantling businesses came within the exception to warrant requirement for administrative inspections in closely regulated businesses. *See also Penn. Com. v. Petroll*, **696 A.2d 817, 827 (Pa. 1997)** (holding that commercial trucking industry was "closely regulated industry" for purposes of determining whether warrantless search was permissible). In the absence of the Hamms' citation of authority to support their assault on the constitutionality of Section 77-7-16, and because we must presume that this section is constitutional, we decline their invitation to declare that Section 77-7-16 is unconstitutional because it violates the Fourth Amendment to the United States Constitution.

### C. Errors in the admission of evidence

### 1. Thomas Hamm's Issue IV.

### a. Items to which he objects

Thomas Hamm complains that the trial judge erred when he granted the State's motion to introduce into evidence "a sawed off shotgun, a 'cookie tin' alleged to have contained a misdemeanor amount of marijuana as well as cigarette rolling papers . . . ." He further argues that the trial judge erred by allowing the State to "continue to elicit testimony about an alleged 'butt' of a marijuana cigarette." Hamm charges that this "was done strictly to inflame the jury and was in direct violation of the Mississippi Rules of Evidence."

### b. Standard of review for evidentiary errors

Rule 103 of the Mississippi Rules of Evidence provides, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." *Davis v. State,* **684 So. 2d 643, 661 (Miss. 1996).** "The discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence." *Id.* Rule 401 of the Mississippi Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." **M.R.E. 401.** Evidence Rule 402 makes it clear that "[e]vidence which is not relevant is not admissible." **M.R.E. 402.**

### c. Sawed-off shotgun

Thomas Hamm maintains that even though Sergeant Gazzo inspected the shotgun and determined that its length was legal, the trial court erred when it sustained the State's motion to introduce it into evidence because its legality rendered the shotgun irrelevant and, thus, inadmissible pursuant to Rule 402 of the Mississippi Rules of Evidence. First, we note that nowhere does the record contain any suggestion of argument by the State during the Hamms' trial that the shotgun was anything but legal.

In *Martin v. State,* **413 So. 2d 730, 733 (Miss. 1982)**, the prosecution introduced testimony describing two weapons found in the motel room of a defendant charged with narcotics trafficking. The defendant objected to the introduction of such testimony, but the trial court admitted the testimony following a hearing on the matter. On appeal, the defendant argued the testimony was irrelevant and highly prejudicial and constituted reversible error. In affirming the conviction, the Mississippi Supreme Court adopted a ruling from the Federal Court which held:

> In any event, we believe that where a defendant is charged with narcotics conspiracy, evidence that weapons were found in his possession may be relevant and admissible. It often happens that illegal enterprises, such as narcotic conspiracies, are ongoing ventures, requiring the use of guns for protection of the contraband and in such a case, a weapon may be as much a tool of the crime as the van used to transport the narcotics. It lay within the sound discretion of the district judge to admit evidence concerning possession or use of weapons, and, on the facts of this case, there was no abuse of discretion in the admission of such evidence.

*Id*. at **733-34** (citations omitted). Based on the foregoing quotation, we hold that the trial judge did not err when he sustained the State's motion to introduce the shotgun into evidence. The State's

production of the shotgun, which Inspector Ford testified Thomas Hamm produced upon his request and which motivated Sergeant Gazzo to request permission of Hamm to search the cab of his truck, corroborated their testimony on that point. The introduction of the shotgun into evidence violated no substantial right of the appellant, and we hold that the trial court did not err in admitting the shotgun into evidence.

### d. Tin can containing small quantity of marijuana found by Sergeant Gazzo in the closet of the truck's sleeper

About the introduction of this evidence, Thomas Hamm argues that there was no evidence that he knew that this tin can containing a small amount of marijuana was in the closet of the sleeper of his truck or that he had exercised any dominion or control over the can. He further argues that because the possession of the amount of marijuana in the can constituted only a misdemeanor offense, his indictment for the felony of possession of more than a kilogram of marijuana with the intent to distribute it made the introduction of the contents of the tin can evidence of other crimes and, therefore, a violation of Rule 404(b) of the Mississippi Rules of Evidence.[3] The State counters his argument by arguing that because Thomas Hamm denied knowing that the 196 pounds of marijuana had been placed in the trailer of his rig because someone else had placed it there while he slept in his sleeper waiting for the produce to be loaded, the tin can and other paraphernalia was admissible to show Thomas Hamm's intent and knowledge that the marijuana was in the trailer.

Perhaps one reason for the State's introducing these items into evidence was to corroborate Sergeant Gazzo's testimony that he found them in the closet of the sleeper. It will be seen that Thomas Hamm complains about Gazzo's testimony about the marijuana butts which he testified he saw in the opened ashtray when he entered the cab because the State never produced them for the jury's inspection. The trial judge did not abuse his discretion in admitting the tin can and its contents of marijuana into evidence, and their admission did not violate a substantial right of Thomas Hamm. Thus, we affirm the trial judge's admitting these items into evidence.

### e. Two marijuana cigarette butts found by Sergeant Gazzo in the ashtray

Hamm repeats his argument on these items that he made about the inadmissibility of the tin can and the marijuana which it contained. In addition, he alleges that the State failed to produce these butts during discovery for his inspection and testing, which would have violated Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice. Sergeant Gazzo testified that once inside the cab of Hamm's Peterbilt, he saw what he thought were two marijuana cigarette butts in the opened ashtray. Gazzo's testimony about these two marijuana butts was offered to establish probable cause for his continuing to search the cab's interior, not as evidence to convict Hamm of the possession of more than one kilogram of marijuana with the intent to distribute. As with Thomas Hamm's objections about the other items, we resolve this issue against him because we find that the trial judge did not abuse his discretion in allowing Sergeant Gazzo to testify about his finding them. That testimony violated no fundamental right of Gazzo's as Rule 103(b). This was not error.

### 2. Thomas Hamm's Issue VI. and Terri Hamm's Issue VIII.

### a. Evidentiary background of issue

The subject of this issue is the note which Sergeant Potts testified that he found in Thomas Hamm's wallet while he searched Hamm after he had arrested him. Written in the note was the multiplication of "65 lbs. x 1100," the result of which was $71,500.00 The note also contained a reference to "1-key" and "71 grams crank". Also written on it were the words, "$5,000.00 from before." When Thomas Hamm testified, he denied that Potts found it in his wallet, but instead testified during the State's cross-examination that the officers found the note in his fuel permit book which he kept on the side of the door of his cab. Hamm denied knowing anything about the note.

The State called Sam Owens, an agent with the Mississippi Bureau of Narcotics for seventeen years. The trial court accepted the State's tender of Owens as an expert in "drug criminal investigation" without objection from counsel for either of the Hamms. Based on his knowledge of what the Bureau of Narcotics had paid for marijuana in its undercover operations, Owens opined that the commercial value of a pound of marijuana varied between $1,100 and $1,500. Hence the result of 65 pounds multiplied by 1100, or $71,500, represented the "going rate" for marijuana on August 23, 1993. Owens further explained that the word "crank" referred to methamphetamine and that the term "one key" referred to one kilogram, or 2.2 pounds.

### b. Violation of Rule 901 of the Mississippi Rules of Evidence

The Hamms collectively assert three grounds to support their position that the trial court erred when it admitted this note into evidence over their objection. First, Thomas Hamm objects that the State could not establish who had written the note and that the State could not establish beyond a reasonable doubt that the contents of the note "pertained to a controlled substance or to some other type of transaction." Therefore, the introduction of the note violated Mississippi Rule of Evidence 901.[4] The State counters this argument by emphasizing that it made no claim that Thomas Hamm or, for that matter, any other person wrote the note. Instead, the State asserts that it introduced the note to show that Thomas Hamm had it in his possession and that "it contained terms common to the drug trade." This was established by the testimony of Mississippi Bureau of Narcotics Agent Sam Owen. Thus, Sam Owen's testimony and Sergeant Potts's testimony that the note was found in Hamm's wallet, which Thomas Hamm denied, was sufficient to satisfy the requirement of Rule 901 that the State demonstrate that the note was what the State claimed. Thomas Hamm cites only Rule 901, but no cases, to support his argument. Thus, we agree with the State that it adduced sufficient evidence to satisfy Rule 901's requirement for authentication sufficient to permit the note to be introduced into evidence, and we reject Thomas Hamm's argument on this aspect of this issue.

### c. The note was hearsay and thus inadmissible

Thomas Hamm's second reason for objecting to the introduction of this note is that it was hearsay and therefore inadmissible pursuant to Rule 802 of the Mississippi Rules of Evidence, which tersely provides, "Hearsay is not admissible except as provided by law." **M.R.E. 802.** He points out that he was unable to cross-examine the author of the note to ascertain what the author intended the terms and figures to mean. The State counters with the argument that the note was not hearsay because it was not trying to prove the truth of anything that was written in the note; instead, its purpose for introducing the note was to offer the jury evidence from which they might well conclude that Thomas Hamm was familiar with the jargon of the illicit trade in marijuana and methamphetamine. The State quotes the comment to Rule 801(c), which reads, "If the significance of a statement is simply that it

was made and there is no issue about the truth of the matter asserted, then, the statement is not hearsay." **M.R.E. 801(c) cmt.** Again, Thomas Hamm has cited no authority, other than the rule itself, to support his stand on this issue. We agree with the State that the note was not hearsay; therefore, Rule 802 did not prohibit the trial judge from admitting it into evidence.

### d. Only the original copy of the note ought to have been introduced into evidence

A photocopy -- not the original copy -- of this note was introduced into evidence because the State admitted that the original copy had been lost. Terri Hamm asserts that the copy of the note should not have been allowed because admitting the photocopy of the note violated Rule 1002 of the Mississippi Rule of Evidence.[5] Thomas Hamm claims that without the original document the jury was unable to inspect the instrument "for additional writing on the back or to examine the quality of the ink and the handwriting." Agent Owens testified that the photocopy he was shown accurately and correctly reflected the original as he saw it on the night of August 26, 1993. Rule 1004 states that "[t]he original is not required, and other evidence of a writing . . . is admissible if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." **M.R.E. 1004.** In *Mitchell v. State,* **609 So. 2d 416, 421 (Miss. 1992),** the Mississippi Supreme Court held that"[a] lthough the original consent forms could not be located for introduction at trial, Rule 1004(1) of the Mississippi Rules of Evidence provides that the original is not required and other evidence of the contents of a writing is admissible, if the original is lost or destroyed." The Hamms do not argue that the State disposed of the original copy of the note in bad faith, and our review of the record contains no evidence of such bad faith on the State's part. This Court holds that the trial judge properly admitted a photocopy of the note.

### D. Terri Hamm's seventh issue that the trial court erred in not granting jury instructions

In her seventh issue, Terri Hamm argues that the trial court erred by failing to grant two instructions which she requested and by deleting the last paragraph of another instruction which the trial judge granted at her request. The three instructions on which she seeks to predicate the trial judge's error read as follows:

INSTRUCTION D2-13

The Court instructs the jury that even if you should find that the husband, Thomas Wayne Hamm, had knowledge of the drugs['] presence in the truck in this case, that fact alone is not sufficient to infer any knowledge or guilt upon his wife, Terri Wright Hamm.

INSTRUCTION D2-14

The Court instructs the jury that even if you find the husband, Thomas Wayne Hamm, guilty, that finding alone is no reason to infer that his wife, Terri Wright Hamm, should also be found guilty.

INSTRUCTION D2-12

"POSSESSION" requires that there must be a finding beyond a reasonable doubt that the Defendants:

1. Were aware of the presence and character of the particular substance, and

2. that the Defendants were intentionally and consciously in possession of it.

Furthermore, "close proximity" to the substance is not by itself adequate to prove "POSSESSION". In addition to "close proximity" there must be a finding beyond a reasonable doubt of other incriminating circumstances shoeing that the Defendant had "POSSESSION" of the substance.

*Finally, where the premises upon which the substance is found is not in the exclusive control of the accused, the accused is entitled to a not guilty verdict, absent some competent evidence connecting the accused with the contraband.*

The trial judge granted INSTRUCTION D2-12, but he deleted the last paragraph, which we have italicized, by inking through it. Terri Hamm asserts that the trial judge erred when he deleted this paragraph over her strenuous objection.

Terri Hamm argues that "[INSTRUCTIONS D2-13 and D2-14] are clearly accurate, and should have been given to the jury." She also argues that "[t]he jury should have been instructed that their duty was to vote not guilty as to Mrs. Hamm if they did not find some type of competent evidence connecting the accused to the contraband to support her stand that the trial judge erred by granting INSTRUCTION D2-12 after he had deleted its final paragraph." However, other than a general reference to *Cunningham v. State*, **583 So. 2d 960, 962-63 (Miss. 1991)**, she cites no authority to support her simple assertion that the trial court erred in denying the two instructions and granting a third instruction after it had deleted its final paragraph. The State notes this omission of authority and argument and suggests that this Court need not consider the issue. *See Ellis*, **651 So. 2d at 1073.**

Nevertheless, this Court will resolve this issue. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Collins v. State,* **691 So. 2d 918, 922 (Miss. 1997).** "A jury instruction may be improper if it incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions." *Williams v. State,* **667 So. 2d 15, 24 (Miss. 1996).** "An instruction which instructs the jury on the law, according to the facts, is sufficient and a duplicate instruction in different words, requested by the defendant, is not required." *Clemons v. State,* **535 So. 2d 1354, 1360 (Miss. 1988).**

Terri Hamm requested and the trial judge granted INSTRUCTION D2-15, which read:

The Court instructs the jury that the mere presence of the wife, Terri Wright Hamm, with her husband, Thomas Wayne Hamm, as a passenger in the truck on the occasion in question is not itself any proof of her guilt in this case.

The trial judge granted the State's requested INSTRUCTION S-6, which read:

The Court instructs the jury that the concept of "possession" is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that the Defendants were aware of the presence of the marijuana and methamphetamine, and were intentionally and consciously in possession of it. It need not be actual physical possession.

Constructive possession may be shown by establishing that the drug involved was subject to one's dominion or control. Proximity is usually an essential element, but proximity by itself is not adequate in the absence of other incriminating circumstances.

Terri Hamm concluded her argument on her seventh issue with the assertion that "[t]he jury should have been instructed that their duty was to vote not guilty as to Mrs. Hamm if they did not find some type of competent evidence connecting [her] to the contraband." From our reading of the instructions actually given as a whole, we hold that they fairly announced the law of the case and created no injustice for Terri Hamm. *See Collins*, **691 So. 2d at 922.** Without citation of specific authority to support her contention that the trial judge erred in instructing the jury, this Court concludes that the granting of INSTRUCTION D2-15 and INSTRUCTION S-6 effectively instructed the jury that "their duty was to vote not guilty as to Mrs. Hamm if they did not find some type of competent evidence connecting [her] to the contraband." Thus, we resolve this issue adversely to Terri Hamm and affirm the trial judge's refusal to grant INSTRUCTIONS D2-13 and D2-14 and his granting INSTRUCTION D2-12 after he had amended it by deleting its last paragraph.

## E. Prosecutorial misconduct during closing argument

### 1. Background

The Hamms's five-year-old daughter, Vera Lee Hamm, was killed in a motor vehicle accident on July 27, 1993, one month before August 23 when they were arrested in Jackson County. Thomas Hamm testified that after his daughter's death, he hired one Randy Donaldson to drive his truck while his wife and he attempted to become reconciled to the tragic loss of their daughter. Hamm explained that although Donaldson and he were not close friends, he had known Donaldson for about fifteen years. Hamm testified that Donaldson was in south Texas when Hamm and his wife decided to go back onto the road just before August 26, 1993. Hamm and his wife left their home in McMinnville, Tennessee, and drove a second eighteen-wheeler, which he also owned, with a load to Houston, Texas.

After the Hamms unloaded in Houston, they then drove their empty rig to Pharr, Texas, where they anticipated getting another load of produce bound for Florida through the broker for which Hamm hauled. Thomas Hamm explained that because they could not locate Donaldson, they left their second rig at the broker's and took the rig which Donaldson had left at the same broker's, and proceeded to load it with the loads of limes and mangoes which his broker had provided for him. Thomas Hamm testified under the State's cross-examination that he knew where Randy Donaldson lived, although the record does not contain Donaldson's address. The point of Thomas Hamm's testimony was that he did not know that the marijuana, methamphetamine, and $6,000 in cash were in the trailer of his rig that Donaldson had left in south Texas. Therefore, he could account for those items of contraband and the cash being in the trailer of his rig only because Randy Donaldson had left them in there from his last trip before Hamm and his wife re-acquired its use in Pharr, Texas. However, the record contains no documentary evidence that the Hamms attempted to subpoena Donaldson as their witness, and Donaldson did not testify during the trial.

### 2. Specific prosecutorial misconduct

Hardly had the prosecutor begun the final summation for the State, when he told the jury:

> The reason is, is the phantom, Randy Donaldson. I don't think he exists. But even if he does, you see, if you were in fact loading out of warehouses -- which the defense would have you believe that that's where the marijuana came from, out of Valverde, out of Del Monte or one of the other warehouses -- there is no way in the world that anybody is going to allow you to load a U-Haul box on their shipment. And they wouldn't even try it. What they would do is they would use a Valverde crate, they'd use a Del Monte crate, they'd use something that came out of that warehouse to hide the marijuana. Now --

The record reflects that the following colloquy occurred among the prosecutor, Thomas Hamm's defense counsel, and the trial judge:

> By counsel for Thomas Hamm: Objection, Your Honor. It's speculation.
>
> By the Court: Overruled.
>
> By the Prosecutor: He does object, because he doesn't want you to hear this. But anybody-
>
> By counsel for Thomas Hamm: I'm going to object to that, Your Honor.
>
> By counsel for Terri Hamm: I'll object to that, Your Honor.
>
> By counsel for Thomas Hamm: It's highly improper and it's highly prejudicial.
>
> By the Court: Sustained. Don't comment on the reason for objections.

After the jury had retired to deliberate its verdict, counsel for both Hamms moved for a mistrial because of the foregoing argument in which the prosecutor indulged, and the trial judge opined that he did not think the prosecutor's comments were "serious enough to warrant a mistrial." He denied the Hamms' motion for mistrial.

### 3. Resolution of the issue

As with some of the earlier issues which the Hamms presented for our review and resolution, they have cited no authority to support their argument on this issue. While we therefore need not consider it, we nonetheless resolve it. The State argues that the trial court sustained the Hamms' counsels' objections to the prosecutor's comment, "[H]e doesn't want you to hear this," and it then cites *Perry v. State*, **637 So.2d 871, 874 (Miss. 1994)**, in which the Mississippi Supreme Court explained: "It is the rule in this State that where an objection is sustained, and no request is made that the jury be told to disregard the objectionable matter, there is no error." (citations omitted). The record in the case *sub judice* reflects that counsel for the Hamms did not ask the trial judge to instruct the jury to disregard the prosecutor's comment that "he doesn't want you to hear this." Thus, there can be no error. It must follow that neither did the trial judge err when he denied the Hamms' motion for a mistrial which they made after the jury had retired to deliberate their verdict. Pursuant to *Perry*, we resolve this issue against the Hamms.

### F. Sufficiency of the evidence

**1. Standard of Review**

In *McClain v. State*, **625 So. 2d 774, 778 (Miss. 1993)**, the Mississippi Supreme Court summarized its standard of review for the issue of whether the State's evidence was sufficient to a jury's verdict of guilty as follows:

> [The appellant] requested a directed verdict at the close of the State's evidence and a peremptory instruction when trial evidence was concluded. His motion to set aside the verdict is essentially and therefore is treated as a motion for judgment notwithstanding the verdict (JNOV). The three challenges by [the appellant] (motion for directed verdict, request for peremptory instruction, and motion for JNOV) challenge the legal sufficiency of the evidence. Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the Circuit Court overruled [the appellant's] motion for JNOV. In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the appellant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. (citations omitted).

Aware of the foregoing standard of review, we review separately the arguments of Thomas and Terri Hamm on the issue of whether the evidence was sufficient to support the jury's verdicts of their guilt of the crimes of which they had been indicted.

**2. Thomas Hamm**

The first issue which Hamm addresses in his brief that "[t]he jury's verdict was in error due to the fact that no credible evidence was presented proving beyond a reasonable doubt that [he] ha[d] dominion and control over the alleged contraband." Hamm argues that mere proximity is not sufficient to warrant conviction for *constructive* possession of a controlled substance and that the State must offer evidence that the accused was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. He then cites and analyzes a string of decisions by the Mississippi Supreme Court beginning with *Curry v. State*, **249 So. 2d 414 (Miss. 1971)** and concluding with *Cunningham v. State*, **583 So. 2d 960 (Miss. 1990)** which support his stance on this issue. Indeed, the Mississippi Supreme Court reversed Cunningham's conviction of the possession of cocaine because "[w]e cannot presume that, merely because a passenger is in proximity to contraband, the passenger possesses the contraband." *Cunningham*, **583 So. 2d at 963.**

The State counters Hamm's argument with its assertion that his possession was not constructive, but was actual possession because he owned both the truck and the trailer in which the marijuana and the methamphetamine were found. In *Cunningham*, the supreme court noted that "[a] presumption of constructive possession arises against the owner of premises upon which the contraband is found." *Id*. **at 962** (citations omitted). *See also Hamburg v. State*, **248 So. 2d 430, 432 (Miss. 1971)** (holding that "one who is the owner in possession of the premises . . .is presumed to be in

constructive possession of the articles found in or on the property possessed").

On direct examination, Thomas Hamm admitted that he owned the Peterbilt truck and the trailer that it pulled on the night of August 26, 1993. On cross-examination by the State, Hamm testified that the trailer was completely empty when he opened its doors and backed it into the loading dock at the Valverde Produce Company in McAllen, Texas. Inspector Ford testified that the trailer was locked with a padlock when he inspected it at the weighing station and that Thomas Hamm unlocked the padlock with a key which Hamm produced from his person. Both the marijuana and the methamphetamine were found in front of Hamm's first load which was placed in his trailer at Valverde. The MHP officers and MPSC inspectors who unloaded the bales of marijuana from the trailer at the Orange Grove scales on Interstate 10 testified that the U-Haul cardboard boxes which contained the marijuana were too tall to be carried over the top of the load and beneath the ceiling of the refrigerated trailer. Instead, Inspector Dupont testified that he removed the bails of marijuana from the U-Haul boxes and then passed them to Sergeant Potts on the other side of the front load.

On direct examination Hamm stated that because the first load was not immediately ready for loading when he arrived at the Valverde Produce Company, he climbed into the sleeper of his truck and went to sleep while he waited for his trailer to be loaded. Therefore, any employee of Valverde or any other person had the opportunity to place the four U-Haul boxes of marijuana and the box of methamphetamine in the trailer unbeknownst to him. Hamm also testified that he had never noticed the cutting board, tube, and razor on the truck's floorboard between the seats of his Peterbilt because Donaldson had left the cab's interior littered with tools, maps, and other detritus of driving.

There remains the note which Sergeant Potts testified he found in Hamm's wallet when he searched Hamm pursuant to his arrest but which Thomas Hamm testified had been placed in his fuel book kept in the truck's door. We have previously described the contents of this notes in detail. Agent Sam Owens opined about the significance of the figures and terms contained in the note, which testimony we also earlier reviewed.

With the previous recitation of the testimony and evidence in mind, we resort to our previously quoted standard of review to resolve this issue. This Court must accept as true the credible evidence consistent with Thomas Hamm's guilt, and it must give the State "the benefit of all favorable inferences that may reasonably be drawn from the evidence." This Court may reverse only if it can conclude that "reasonable and fair-minded jurors could only find the accused not guilty." *See McClain*, 625 So. 2d at 778.

The presumption of Thomas Hamm's constructive possession of the contraband which his ownership of the truck and trailer created, the note, and the location of the contraband in his trailer were a sufficient basis on which the jury might rest its verdicts of Thomas Hamm's guilt of possession of more than a kilogram of marijuana with intent to deliver and possession of methamphetamine. We affirm the trial judge's denial of Thomas Hamm's motion for judgment notwithstanding the verdict which Hamm presented after the jury had returned its verdicts against him.

### 3. Terri Hamm

Terri Hamm attacks the sufficiency of the evidence to support the jury's verdicts of her guilt by asking "[w]hether the jury's verdict was in error since there was no credible evidence of [her] actual

possession and control of the contraband?" Of course, we review her attack on the sufficiency of the evidence with the same standard of review as we previously employed. There are obvious factual differences between Terri and Thomas Hamm's positions on their respective issues. Unlike her husband, Terri Hamm did not own the truck, and she did not have a commercial driver's license. Neither did the State demonstrate that she had a key which would unlock the padlock on the doors of the refrigerated trailer.

In her argument on this issue, Terri Hamm stresses that her counsel asked MHP Sergeant Potts, MPSC Inspector Ford, MHP Sergeant Gazzo, MPSC Inspector Dupont, and Agent Sam Owens with the Mississippi Bureau of Narcotics if any of them had any evidence to connect her with the contraband other then her proximity to it and that all six of them could supply no other evidence.

We have already recited that Terri Hamm traveled with her husband in his Peterbilt truck and trailer from their home in Tennessee to Houston and on to South Texas where they were loaded with limes and mangoes for transportation to Jacksonville and Tampa, Florida. Sam Owens testified that Miami was recognized as a destination for controlled substances shipped into the United States from other countries and as a point from which these controlled substances were distributed throughout the United States. The State introduced into evidence a photocopy of a hotel bill from Budget Inn in Richmond, Texas, for the night of August 23, 1993, in the name of Terri Hamm. The Hamms testified that Terri Hamm alone spent the night in Budget Inn while her husband unloaded the freight in his trailer in Houston, Texas.

The hotel bill included the charge for two long-distance telephone calls which were placed from the telephone in the room, the first of which was made to (813) 639-9870 at 10:08 p.m., and the second of which was made to (813) 639-9933 at 11:15 p.m. Sam Owens testified that both of these telephone numbers were pay telephones located in Miami, Florida. During the direct-examination of Terri Hamm, she testified that she did not remember making any telephone calls from her room in the Budget Inn the night of August 23. Terri Hamm's memory did not improve under the State's cross-examination about these telephone calls.

In *Martin v. State,* **413 So. 2d 730, 732 (Miss. 1982)**, the Mississippi Supreme Court opined that the elements of constructive possession may be proved by circumstantial evidence. Terri Hamm testified in her own behalf, but from her inability to remember having made two telephone calls to pay phones in Miami, the jury may well have been warranted in infer that the calls related to the delivery of the contraband which Terri Hamm knew her husband was going to pick up in South Texas and deliver after he arrived in Florida. "If it be sufficient to support an inference of guilt and the defendant fails to offer a reasonable explanation consistent with innocence, such failure may be considered by the trier of fact." *Ohio v. Clay*, **280 N.E.2d 385, 388 (Ohio Ct. App. 1972).**

Our standard of review reminds us that we must review the sufficiency of the evidence "on the last occasion the challenge was made" and that "[t]he prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *See McClain*, **625 So. 2d at 778.** We are therefore allowed to consider the state of the evidence after Terri Hamm had testified. From all the evidence which the State adduced in the trial *sub judice*, we permit the jury to infer from the telephone calls made to two pay-phones in Miami by Terri Hamm, the presence of the paraphernalia and small quantity of marijuana in a tin can in the closet of the sleeper of her husband's

truck, and her accompaniment of her husband from Tennessee to South Texas to Florida that Terri Hamm knew that her husband's trailer was carrying more than limes and mangoes. We hold that "a reasonable and fair-minded [jury] could . . . find [Terri Hamm] guilty," and we affirm the trial court's denial of her motion for JNOV.

## G. Disproportionality of Thomas Hamm's sentence

For his seventh issue, Thomas Hamm argues that because his sentences were disproportionate to those of his wife, this Court should remand his convictions to the trial court for resentencing. We previously recited the respective sentences which the trial judge imposed on both Thomas and Terri Hamm.

The Mississippi Supreme Court has written, "It is well settled that the imposition of a sentence is within the discretion of the trial court and this Court will not review the sentence, if it is within the limits prescribed by statute." *Reed v. State,* **536 So. 2d 1336, 1339 (Miss. 1988).** Section 41-29-139 of the Mississippi Code sets out the maximum penalties for violating the law regarding controlled substances. The Hamms were found guilty of possession of more than one kilogram of marijuana with intent to distribute. Section 41-29-139(b)(1) sets the maximum penalty for the conviction of this offense at imprisonment in the Mississippi Department of Corrections for not more than thirty years or the imposition of a fine not less than $1000 nor more than $1,000,000, or both. Miss. Code Ann. § 41-29-139(b)(1) (Rev. 1993). The maximum penalty for possession of methamphetamine is imprisonment for not more than three years or a fine of not less than $1000 nor more than $30,000, or both. **Miss. Code Ann. § 41-29-139(c)(1) (Rev. 1993).**

The sentence that the trial judge imposed upon Thomas Hamm following his conviction fell within the maximum penalties which Section 41-29-139(b)(1) prescribed. The mere fact that the trial judge did not impose the same punishment upon Terri Hamm that it did upon Thomas Hamm is no *per se* indication of the disproportionality of Thomas Hamm's sentence. The United States Court of Appeals for the Fifth Circuit has established that a defendant cannot allege a charge of disproportionate sentencing based solely on the fact that a co-defendant received a lesser sentence from the trial court, if that sentence falls within the guidelines set by statute. *United States v. Pierce,* **893 F.2d 669, 678 (5th Cir. 1990).**

At the sentencing hearing following the Hamm's conviction, the trial judge explained his reason for giving Mrs. Hamm a lesser sentence:

> I feel like that, as far as culpability, I would agree with really all parties here to the extent that Mrs. Hamm probably had less culpability or less involvement, probably, than her husband did. I would, I would just make that observation. And I do think that the sentence of Mrs. Hamm should be less than that of her husband. I'm cognizant of the fact that she's just had a baby and it's regrettable that, that a child comes into the world and his, his parents are faced with this, you know. I mean that's really a regrettable situation, but it's something over which the Court doesn't have any control, except to say that it's regrettable. I mean, I don't see how you could say it any other way other than that it's just a sad situation that a baby is going to be reared in this situation with this. [I]t's the duty of the Court to impose what it considers to be an appropriate sentence in these cases.

The trial judge explained on the record his reasons for levying a lesser punishment on Terri Hamm, and it was within his discretion to do so. Therefore, we affirm the trial court's sentences which it imposed on Thomas Hamm.

## IV. SUMMARY

We resolved the Hamms's issues in this order: (1) the search of Thomas Hamm's truck and trailer, (2) the admissibility of certain items into evidence, (3) jury instructions which Terri Hamm requested but the trial judge refused, (4) prosecutorial misconduct during closing conduct, (5) the sufficiency of the evidence to support the jury's verdicts of the Hamms' guilt, and (6) the disproportionality of the Hamms' sentences. Our summary of the issues follows the same order.

Thomas Hamm did not dispute Sergeant Gazzo's and Inspector Ford's testimony that he consented to Sergeant Gazzo's search of Hamm's truck-cab's interior; neither did Thomas Hamm testify in support of his motion to suppress the fruit of Sergeant Gazzo's search. We decline to infer from the evidence in the record, as Hamm suggests we should, that his consent to search was anything but voluntary. Terri Hamm neither owned the truck and trailer nor attempted to establish that, as the truck's passenger, she claimed any sort of privacy interest in the interiors of either the truck's cab or the trailer. Therefore, we have found that her consent to Sergeant Gazzo's search was unnecessary. In the face of the presumption that Section 77-7-16 of the Mississippi Code is constitutional, in the absence of the Hamms' citation of authority that this section is unconstitutional, and pursuant to the authorities with which we are familiar, we decline to adjudicate that this section is unconstitutional. Therefore, Section 77-7-16 authorized MPSC Investigators Ford and Dupont to enter Thomas Hamm's trailer for the purposes that they testified they entered it. No poisoned tree takes root in this case; the fruit of the MPSC inspectors' search was admissible.

Rule 103(a) of the Mississippi Rules of Evidence provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." The trial judge did not abuse his discretion in admitting the sawed-off shotgun which Thomas Hamm produced. The paraphernalia and the small amount of marijuana found in the cab's interior, like the note which Sergeant Potts testified he found in Thomas Hamm's wallet, were relevant to the issues of whether Thomas Hamm knew that he was transporting marijuana and methamphetamine in the trailer of his rig.

The trial judge did not err when he denied Terri Hamm's request that he grant Instructions D2-13 and D2-14; neither did he err when he amended Instruction D2-12 by deleting its last paragraph. We will not allow the Hamms to prevail in their argument that because the prosecutor stated, "[H]e doesn't want you to hear this," they are entitled to a new trial based on prosecutorial misconduct. The trial court sustained the Hamms' counsels' objections to that comment, but neither counsel requested the trial judge to instruct the jury to disregard the comment. *See Perry v. State*, **637 So. 2d at 874.**

Our review and analysis of the evidence, which the State adduced to support its prosecution of the Hamms, and the inferences which a reasonable jury might draw from that evidence, were sufficient to support the jury's verdicts of Thomas and Terri Hamm's guilt. Finally, Thomas Hamm's sentences were within the limits set by the statutes for the violations of those statutes of which the jury found him guilty. Thomas Hamm's sentences were not disproportionate to the sentences to the sentences which the trial judge imposed on his wife, Terri Hamm. Therefore, we affirm the trial court's

judgments of the Thomas and Terri Hamm's convictions and the sentences which the trial court imposed upon them both pursuant to those convictions.

**THE JACKSON COUNTY CIRCUIT COURT'S JUDGMENT OF THE GUILT OF THOMAS WAYNE HAMM'S POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA, A CONTROLLED SUBSTANCE, WITH INTENT TO DISTRIBUTE AND ITS SENTENCE OF THOMAS WAYNE HAMM TO PAY A FINE OF $100,000, TO PAY A LAB FEE OF $125, AND TO SERVE A PERIOD OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED.**

**THE JACKSON COUNTY CIRCUIT COURT'S JUDGMENT OF THE GUILT OF THOMAS WAYNE HAMM'S POSSESSION OF METHAMPHETAMINE, A CONTROLLED SUBSTANCE, AND ITS SENTENCE OF THOMAS WAYNE HAMM TO PAY A FINE OF $10,000, TO PAY A LAB FEE OF $125, AND TO SERVE A PERIOD OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WHICH IS TO RUN CONCURRENTLY WITH THE SENTENCE OF TWENTY YEARS FOR HIS CONVICTION OF POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA, A CONTROLLED SUBSTANCE, WITH INTENT TO DISTRIBUTE ARE AFFIRMED.**

**THE JACKSON COUNTY CIRCUIT COURT'S JUDGMENT OF THE GUILT OF TERRI WRIGHT HAMM'S POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA, A CONTROLLED SUBSTANCE, WITH INTENT TO DISTRIBUTE AND ITS SENTENCE OF TERRI WRIGHT HAMM TO PAY A FINE OF $10,000, TO PAY A LAB FEE OF $125, AND TO SERVE A PERIOD OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED.**

**THE JACKSON COUNTY CIRCUIT COURT'S JUDGMENT OF THE GUILT OF TERRI WRIGHT HAMM'S POSSESSION OF METHAMPHETAMINE, A CONTROLLED SUBSTANCE, AND ITS SENTENCE OF TERRI WRIGHT HAMM TO PAY A FINE OF $1,000, TO PAY A LAB FEE OF $125, AND TO SERVE A PERIOD OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WHICH IS TO RUN CONCURRENTLY WITH THE SENTENCE OF FIVE YEARS FOR HER CONVICTION OF POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA, A CONTROLLED SUBSTANCE, WITH INTENT TO DISTRIBUTE ARE AFFIRMED.**

**COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**

1. Rule 28(i) provides:

In cases involving more than one appellant or appellee, including cases consolidated for purposes of the appeal, any number of either may join in a single brief, and any appellant or appellee may adopt by reference any part of the brief of another. Parties may similarly join in

reply briefs.

**M.R.A.P. 28(1).**

2. Section 77-7-16, titled, "Supervision and inspection of safe operation and use of certain motor vehicles" reads, in part:

(1) Supervision and inspection of the safe operation and the safe use of equipment of motor vehicles operating in the state shall be a specified duty of the commission. In accordance therewith, the commission shall promulgate as its own and enforce the rules, regulations, requirements and classifications of the United States Department of Transportation or any successor federal agency thereof charged with the regulation of motor vehicle safety. The commission shall establish a system of reciprocity with other states to facilitate the inspection of motor vehicles provided for in this subsection.

(2) The commission shall have the authority to inspect for safe operation and

safe use of equipment the following motor vehicles:

(a) Each holder of a certificate of convenience and necessity, a permit to operate as a contract carrier or interstate permit;

(b) Any individual, corporation or partnership engaged in a commercial enterprise operating a single motor vehicle or those in combination with a manufacturer's gross vehicle rating of more than ten thousand (10,000) pounds; and

(c) Any individual, corporation or partnership operating a motor vehicle of any gross weight transporting hazardous material that requires placarding under the Federal Hazardous Material Regulations.

**Miss. Code. Ann § 77-7-16 (Rev. 1991).**

3. Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**M.R.E. 404(b).**

4. Evidence Rule 901(a) reads:

(a) The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

**M.R.E. 901.**

5. Rule 1002 states:

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided by law.

**M.R.E. 1002.**